36

Common Pleas Court of Richland County.

STARK V. STARK.

Decided July 29, 1929.

*C. H. Workman, Wm. F. Voegele,* and *L. C. Stillwell,* for plaintiff.

*C. J. Pretzman,* and *Mansfield & Black,* for defendant.

[NOTE:—This cause was submitted to the Court of Appeals of Richland county on the 14th day of January, 1930. The decision was reserved. On the 21st day of January, 1930, Virginia W. Stark died, before the decision was rendered. Thereafter, on February 10, 1930, the Court of Appeals dismissed the cause as to the divorce, holding that death had abated the action, and affirmed the case as to property rights. On the 16th day of April, 1930, the Supreme Court overruled a motion to certify the record.]

McCLURE, J.

This is an action for divorce brought by a husband against his wife on the grounds of extreme cruelty and gross neglect of duty. For a second cause of action an agreement for separate maintenance entered into between the parties on June 4, 1921, is sought to be modified to meet the changed financial situation of the parties which is at present alleged to exist.

The answer of the defendant is a specific denial of all the allegations of the petition charging cruelty and gross neglect.

As to the second cause of action, it is the position of the defendant that the court is without jurisdiction in this suit to change or modify an agreement voluntarily entered into between the parties; but that, if any such power exists, it can only be exercised upon the granting of a divorce.

With the latter proposition the court is in agreeement upon the authority of the case of *Schaffer* v. *Schaffer,* 114 O. S., 310. The evidence discloses that the parties were married in 1882, that five children were born, four of

whom are living and all but one married. The youngest son, James, is an invalid incapable of maintaining himself.

The plaintiff gives his age as sixty-seven years and the defendant as seventy-five years. It is conceded that from about the year 1900 to 1920 the domestic life of the parties was unhappy, and that frequent quarrels occurred, the cause of which the plaintiff ascribed to the jealous disposition of the defendant and this she denies; and then at great length and with much detail and circumstance an attempt is made to establish that the plaintiff, during the years 1902 and 1903, had improper relations with a married woman, one Mrs. Collins, then living with her husband, while the parties, including the defendant during a portion of the time, were boarding at a hotel in St. Albans, W. Virginia, at which place the plaintiff had business interests. Also that he was guilty of immoral conduct with one Corrine Cook, a divorced woman living in Mansfield in 1918 and 1920, at and prior to the time the separation took place between the plaintiff and defendant.

Without reviewing at length the testimony *pro* and *con* relative to these transactions, the court is unable to find from the proofs any such misconduct on the part of the plaintiff as will bar his right to recover in this action if any he has. The proof certainly falls short of any showing of illicit relations existing between the plaintiff and eight of the women named. The same may be said of his relations with Mrs. Ruby Tarr which are charged to have been the cause of a divorce procured by her from her husband, Alexander W. Tarr, in the year 1926. Tarr claims to have had knowledge of the immoral relations at the time her divorce was granted, yet he consented to a decree against him on the ground of extreme cruelty. The court entertains doubt as to the veracity of this witness and is not impressed with the explanation that he submitted to the decree in order to protect her reputation. Mrs. Tarr appears to be a woman of a highly emotional nature who has dramatized her position and greatly ex-

aggerated the significance of the attentions paid her by the plaintiff.

At all events no such conduct of the plaintiff is shown as would warrant the court in finding of "adulterous acts," "clearly proven," by the "overwhelming preponderance of the evidence," such as were held to defeat the application for a divorce in the case of *Carpanty* v. *Carpanty,* 5 Ohio Law Abstract, 264, referred to in the brief for defendant. On the contrary the proof consists chiefly of testimony as to public meetings, in hotels, on streets and in other places of public resort. The testimony of the witnesses Howarth and Piowatty as to improper conduct of plaintiff with Mrs. Cook is put in question by impeaching witnesses and contradicted by the plaintiff's evidence. The plaintiff is at least entitled to the benefit of the presumption which prevails in favor of one charged with crime, and the court will not be justified in the inference that adultery has been committed by the plaintiff without convincing proof of the fact which does not appear in this record.

Following a long series of grievances of which each party accuses the other, including acts of physical violence claimed by each against the other but without corroboration, and as to the occurrence of which the court expresses no opinion, the plaintiff left the domicile in Mansfield, as he says, in August of 1920, and went to live at a hotel. He testifies that the immediate cause of the separation, was a difference, which arose over his objection to the presence of the defendant's sister in his home, and that he insisted that she be asked to leave which defendant refused to do.

This claim is denied by the defendant, although admitting that her sister was not friendly to the plaintiff or he to her, and that she did not request her to leave. Whatever be the fact as to this it is clear that it became apparent to both parties not only as appears from their conduct but also as stated in their separation agreement, that it was impossible for them longer to continue living together, whereupon a liberal provision was made for the

support of the defendant and a residence purchased by plaintiff for her use at Bexley, Ohio.

It is urged against the plaintiff that he compelled the defendant to remove from Mansfield, but it appears that the contract was prepared by her son, M. D. Stark, if not with her knowledge at least with her consent, that it stipulated a payment to her by plaintiff of an annuity of $10,-000 and a provision for furnishing a separate residence, and no proof of compulsion appears other than the testimony that plaintiff insisted upon this provision and this is denied.

The court inclines to the view that the plaintiff desired to occupy his own home in Mansfield, where his business was located, and in order so to do was willing to pay a generous amount for support and provide a home for his wife elsewhere, and upon the offer of a sufficient inducement to her she accepted his proposal. At that time, so far as it was in their power to do, the parties severed all marital relations, which had in fact ceased as both testify, some years before, and which have never been resumed.

It is evident to the court that both plaintiff and defendant, at this time, desired to avoid the publicity of a divorce proceeding, and if the plaintiff had continued to enjoy the income which he had when this contract was made, it is unlikely that any suit would have been commenced by him either to terminate the contract or obtain a divorce. But since a suit for divorce was the only remedy against the contract this action followed.

The proof shows that in 1920 the plaintiff was deriving from the various enterprises in which he was engaged an income of about $45,000 per year. Owing to business reverses it now appears that with the exception of a small investment in oil stock and some small holdings of real estate, he has no means or income whatsoever. He is, nevertheless, bound by the terms of the separation agreement to pay a large sum annually for the support of the defendant, an amount in fact, which far exceeds his entire net worth as shown by the evidence.

It has long been recognized that the court in a divorce

proceeding is vested with authority to make a suitable allowance of alimony to either plaintiff or defendant, and in so doing may have regard for the situation of the parties, the source from which their property was derived and to safeguard the interest of children.

It is equally settled that the court has a continuing jurisdiction to modify an existing order or agreement where the parties are properly before the court in a divorce action and a decree is entered granting a divorce, the only exception, apparently, being where the order of the court in the first instance is made upon and in confirmation of an agreement of the parties by which it is held their rights are unalterably fixed.

In the instant case no order of any court has been invoked in relation to this contract, except the action at law to enforce the collection of installments claimed to be due thereunder, until this proceeding was commenced seeking a modification of the same.

The court is therefore of the opinion that should it find the plaintiff entitled to the relief prayed for in his petition, it will have ample power to deal with the question of alimony and property rights, unimpeded by any former agreement existing between the parties, except in so far as the same is fair and equitable, and guided solely by the present financial situation of the respective parties, their probable income and present means of support.

To state the case concisely the court is confronted with the necessity of refusing to grant the plaintiff, to which he is clearly entitled as against the terms of a contract now manifestly unjust to him in the present situation of the parties, or, as an alternative, to give the sanction of the law to a separation between the parties which has existed for eight years by mutual consent, after more than twenty years of domestic disagreement.

The evidence of the principals is directly opposed in nearly every material matter, and the court is left chiefly to the testimony of disinterested witnesses and the internal evidence to arrive at the truth. Upon a consideration of the whole evidence the court is clear that there grew in

the mind of the defendant an attitude of opposition to the plaintiff, which was reflected in her conduct and demeanor toward him leading to constant bickerings and recrimina-. tion over a long period of time, such as might be said to amount to extreme cruelty and gross neglect of duty, and which finally resulted in a mutual withdrawal from the semblance of a marital relation, which by the testimony of both parties had ceased to have any reason for continuance.

To justly appraise all of the causes which led to this situation or to say that the defendant was wholly to blame, is beyond the power of the court, but enough and more than enough appears in the evidence to satisfy the mind of the court that a bond which has ceased to have any justification for its existence, but remains merely as a naked legal status, without advantage to either party ought to be severed.

There remains to be considered but one other phase of the case which is said to present a legal objection to the granting of a decree in favor of the plaintiff. This is the question of laches. It is urged that the plaintiff by his delay in bringing this action has forfeited his right to be heard by the court.

But one case in Ohio is cited in support of this proposition, that of *Radatz* v. *Radatz*, 11 O. D., 55, the facts of which distinguish it from the present case, and in which the court found the action not prosecuted in good faith but for an ulterior purpose.

In some of the states the action for divorce is expressly limited by statute, but this is not true in Ohio. While the nature of the divorce action is *quasi* equitable, it is in fact controlled by statutory provision, and if a limitation is to be imposed this would seem to be the province of the Legislature rather than the court.

The court after full consideration finds the allegations of the plaintiff's petition to be sustained by the evidence, and that the plaintiff is entitled to be divorced from the defendant upon the grounds of extreme cruelty and gross neglect of duty, and that the contract for separate main-

tenance theretofore existing between the parties be abrogated and treated as of no effect, and in lieu thereof the plaintiff is ordered to transfer all of his interests in the shares of stock owned by him in the North American Watch Company, the American Column & Lumber Company, his undivided one-half interest in a certain lot or lots in St. Albans, W. Virginia, standing in the joint names of plaintiff and his son M. D. Stark, and his interest if any in certain lots or land referred to as Bell Heights lots, located in Mansfield, Ohio, to this defendant, all of said real and personal property to be received by her in full settlement and satisfaction of a certain judgment in the sum of $17,000, recovered by her against the plaintiff in the Common Pleas Court of Cuyahoga county, Ohio, in Case No. 303892, entitled Virginia W. Stark vs W. Stark, on the docket of said court.

It is further ordered that the expense of the maintenance of their invalid son, James Stark, be apportioned equally between his parents and that so long as said James Stark is maintained at the expense of his mother, Virginia W. Stark, the plaintiff shall pay to the defendant a sum not to exceed fifty dollars per month in advance upon the first day of each month from and after the date of the entry herein and until the further order of the court.

A decree may be prepared in accordance with this finding and the costs of this suit are adjudged respectively against the parties incurring the same. Exceptions will be noted on behalf of the defendant and an appeal bond fixed in the sum of $300.