Jones, J.
 

 In the case of
 
 DuBois
 
 v.
 
 Coen, Ex’r.,
 
 100 Ohio St., 17, 125 N. E., 121, this court held that the term “legal relations” comprised not only marital relations, but also property which the law gave to husband or wife upon death of a consort. The same case is also authority for the principle that a husband and wife,
 
 living together,
 
 cannot alter such legal relations by any post-nuptial agreement contracting away the dower rights and distributive share in the property of each other. The reasons assigned sustaining the principle so announced are found in that reported case. The question whether such husband and wife,
 
 with a view to separation,
 
 could enter into a postnuptial agreement contracting away their respective dower rights and distributive shares in the property of
 
 *231
 
 each other was distinctly reserved, as appears in the following sentence closing the opinion:
 

 “Whether the husband and wife act would permit such a contract to be made in a case where separation occurs we do not now decide, as that situation does not present itself in this case.”
 

 We are now confronted with the question then mooted. Since many of the features affecting rights of contract were discussed in the
 
 DuBois case,
 
 repetition of that discussion need not be made here. Naturally the whole question turns upon the construction and legislative intent which should be given to Section 8000, General Code, which follows:
 

 “A husband and wife cannot by any contract with each other alter their legal relations, except that they may agree to an immediate separation, and make provisions for the support of either of them and their children during the separation.”
 

 However, we may again call attention to the fact that the act of March 19, 1887 (84 O. L. 132), was a legislative codification relating to the conjugal and property rights of husband and wife, including those of dower and distributive share. The common-law inhibitions surrounding the wife were abrogated by the act which gave her equal power with her husband to hold, dispose of, or contract with reference to property, both real and personal, subject to the rules controlling persons occupying confidential relations; and husband and wife under the provisions of Section 7999, General Code, now may “enter into any engagement or transaction with the other, or with any other person,” which either might do if unmarried. By
 
 *232
 
 that section a broad power to contract has been given to either consort, and if an inchoate right of dower or right to distributive share may be released undoubtedly Section 7999, General O'ode, itself would be sufficiently comprehensive to give the consort that right, except as limited by the sections following. This right was denied a son in
 
 Needles, Ex’r.,
 
 v.
 
 Needles,
 
 7 Ohio St., 432, 70 Am. Dec., 85. But that decision is not decisive of this case for reasons hereafter stated. The devolution of property by way of dower and distributive share is purely statutory, and subject to legislative control. In the
 
 DuBois case, supra,
 
 this court held that since the right and liabilities of husband and wife, including their right to dower and distributive share, were all included in the same act, these comprised the “legal relations” subject to contract between them. In construing the section under consideration, we held that the act did not give them the right of contract with relation thereto, while the conjugal relation subsisted.
 

 Have they such right if the marital relation has been altered by agreement to separate and a separation actually occurs? Undoubtedly Section 8000, General Code, contemplated that those legal relations to which we have referred are subject to alteration, since the act stipulates that they cannot contract with reference thereto, “except that they may agree to an immediate separation.” In the construction of this section we are not bound by the strict interpretation given to those statutes which abrogate common-law rights and remedies, since the statute itself has changed the common-law
 
 *233
 
 status of the wife by giving her the rights of a feme sole and an unfettered power of contract in respect to her 'Own and her husband’s property.
 

 We think that the crucial question of construction turna upon the meaning which should be given to the language used in Section 8000, General Code, wherein husband and wife are forbidden from altering their legal relations, “except that they may agree to an immediate separation,” etc. That section is composed of two component parts, it permits husband and wife (a) to alter their legal relations by method of agreement upon immediate separation, and (b) to make an agreement for the support of either and their children during separation.
 

 Construing Sections 7999 and 8000, General Code, together, we think it quite apparent that by the former section husband and wife were given comprehensive powers of contract relating to
 
 “any engagement or transaction with the other;”
 
 that by the following section it was the legislative purpose to limit their contractual powers with respect to dower and distributive share, etc. (embodied in the act), to contingencies where they agreed “to an immediate separation;” that the language employed in Section 8000, General Code, denied husband and wife the privilege of altering their legal relations
 
 “except” or
 
 «
 
 case
 
 they might agree to an immediate separation. By the use of the language so employed there is an implication that such “legal relations” could be altered by a contract for an immediate separation; and, conversely, if no separation were contemplated, that then such legal relations could not be altered. That section
 
 *234
 
 also provides that if they do agree to an immediate separation they may contract for the support of either of them and their children during separation. Evidently this clause was embodied in the section for the reason, that otherwise, under Section 7997, General Code, the primary obligation of support was placed upon the husband, and measurably upon the wife in case of his inability.
 

 We are constrained to this conclusion because of the fact that this court, before the passage of the husband and wife act, exercising its equity jurisdiction, upheld contracts between husband and wife for release of dower and distributive share where such contracts were made with a view to separation, and separation occurred. We do not think that the Legislature, when it adopted the act of 1887, granting the wife the feme sole power to contract, had any intention of curtailing at law a right which the wife theretofore had in equity. These contracts were upheld by this court in equity, when fair, reasonable, and just. The equitable application of that principle was carried into the husband and wife act when Section 7999, General Code, provided in terms that a husband and wife
 
 “may enter into any engagement or transaction
 
 with the other * * # subject * * * to the general rules which control the actions of persons occupying confidential relations with each other.”
 

 As early as 1846 this court held in
 
 Bettle
 
 v.
 
 Wilson,
 
 14 Ohio, 257, that articles of separation providing for the support and maintenance of the wife were not void as against public policy where separation took place. In
 
 Thomas
 
 v.
 
 Brown,
 
 10 Ohio St., 247, the husband and wife entered into a postnup
 
 *235
 
 tial agreement in contemplation of separation. In consideration of the wife’s release of dower and the support of herself and children, the husband agreed to convey a portion of his farm to her. The wife performed her agreement, but the husband died without conveying the land. The court decreed a conveyance as against the heirs of the husband. In
 
 Miller’s Ex’r.
 
 v.
 
 Miller,
 
 16 Ohio St., 527, an agreement of separation was entered into between the husband and wife, followed by a separation. The husband paid the wife $700 in consideration of the wife’s release of all her claims as distributee of his estate in case she survived him. After the husband’s death, the wife sued for her distributive share, and the court held that such postnuptial agreement, made in view of voluntary separation, where fully executed by one party, would be upheld and enforced in equity, if fair, reasonable, and just.
 

 It is again urged that the “legal relations” subject to alteration by contract are those which are purely marital, and that the dower and distributive share obligations designated in the act were not comprised within that term; that under the last clause of ¡Section 8000, General Code, the statutory authorization permitted husband and wife to contract only for immediate separation, and for the support of either spouse and their children. Such construction, in view of the consideration of the whole act, is not reasonable, since without legislative authorization the husband and wife had power to make a valid contract for separation and support, under the pronouncement of this court in the case of
 
 Bettle
 
 v.
 
 Wilson, supra.
 

 
 *236
 
 There are decisions in various jurisdictions of this country which uphold the right of husband and wife to enter into a contract of this character whether separation occurs or not. Among others are
 
 Crum
 
 v.
 
 Sawyer, 132
 
 Ill., 443, 24 N. E., 956, and
 
 Carling
 
 v.
 
 Peebles, Adm’r.,
 
 215 Ill., 96, 74 N. E., 87. The Illinois decisions were based upon a general grant of power to husband and wife to contract, similar to that contained in Section 7999, General Code; but the Illinois statute does not seem to place a limitation upon such contract, as does Section 8000 of our Code, which qualifies that right by requiring an agreement for immediate separation. We do not deem it necessary to refer to various decided cases where separation agreements similar in character to the one under consideration have 'been upheld.
 

 In
 
 Melrose v. Besser,
 
 77 Ind. App., 3, 133 N. E., 27, the Chief Justice of the Indiana court, citing numerous cases in its support, announced the following general principle:
 

 “It is the settled law both of England and of this country that an agreement of separation between a husband and wife whereby he provides for her separate maintenance, and she covenants to release all her claims upon his estate, is lawful, and not in contravention of public policy.”
 

 In view of the adjudicated oases in various jurisdictions, including our own, upholding the right of husband and wife to make contracts of this character, which were uniformly enforced in equity, we think that the Legislature, under the comprehensive provisions of the sections referred to, gave to each spouse a right at law to enter into these
 
 *237
 
 separation contracts. When this act was adopted in 1887 it was the evident purpose of the Legislature to enlarge, and not to limit, the contractual rights of husband and wife; and if this court should now so construe the husband and wife act as to deprive these consorts from entering into contracts involving each other’s rights to dower and distributive share, we would be lending our aid to a principle shackling contractual liberty theretofore enjoyed by them. One positive limitation in the act is the requirement found in Section 7999, General Code, subjecting their transactions to the rules controlling persons occupying confidential relations.
 

 The syllabus of this court in the case of
 
 McGee
 
 v.
 
 Sigmund,
 
 109 Ohio St., 375, 142 N. E., 676, does not support the conclusion arrived at here, nor is it ini accord with the principle announced in
 
 Miller’s Ex’r.
 
 v.
 
 Miller, supra.
 
 In the
 
 McGee
 
 v.
 
 Sigmund case
 
 there was a separation agreement similar to the one in the instant case. The husband and wife each released the right to dower and distributive share. The parties carried out the agreement, the husband as part consideration therefor assigning to his wife bank stock valued at $2,500, and releasing his title and claim to the household goods and furniture. The parties separated, and the terms of the agreement were fully complied with up to the death of the wife, who died intestate, leaving her. niece as the nearest blood relation. The niece sued the husband for specific performance of the contract whereby he had released, among other things, all claims for dower and distributive share in his wife’s property.
 
 *238
 
 This court sustained the lower court in dismissing the petition of the niece upon the authority of
 
 Needles, Ex’r.,
 
 v.
 
 Needles,
 
 7 Ohio St., 432, 70 Am. Dec., 85, the syllabus in the
 
 McGee case
 
 stating that a husband or wife was not “empowered to contract with the other with reference to a hope or expectancy of inheritance, which is neither vested nor contingent.” By placing the spouse of a deceased consort upon the same plane as an ordinary heir, and in holding that such spouse’s expectancy of inheritance was neither vested nor contingent, we think that the principle stated in the syllabus erroneously extended the rule announced in the
 
 Needles case, supra;
 
 that the character of the estate succeeded to by the wife can be clearly distinguished from that of an ordinary heir. The
 
 Needles case, supra,
 
 in the sixth paragraph of the syllabus held that:
 

 “The mere expectancy or chance of succession of an heir apparent to his ancestor’s estate at his decease, is not the subject-matter of release or assignment at common law.”
 

 There is an important difference between the character of an estate, which a consort will receive on the death of her spouse, and the naked possibility of an estate which a son or daughter may receive from an ancestor. The latter is a naked and remote possibility. A son has no right to his father’s estate, either vested or contingent, prior to the death of the ancestor. The latter owes no legal obligation to the former and may will his estate at pleasure. A son releasing all of his claims against bis father’s estate thereby enters
 
 *239
 
 into a contract where there is neither mutuality nor obligation upon the part of the ancestor, for without the contract of release the ancestor could distribute his property at pleasure as against any one but his own spouse. See the
 
 Needles case, supra,
 
 page 445. The interest of an heir is a naked possibility, a mere expectancy of inheritance. But a spouse has an interest in the property of the other, contingent upon survival, which cannot be divested by will. In addition, dower is an interest that has a present value which cannot be abrogated without consent of the owner. Therein lies the clear distinction between the character of the interest which a spouse may contract to release and that of an ordinary heir. Under the statutes of our state, the law gives to the surviving consort a definite portion of the intestate’s property, both real and personal. This right, whether to dower or distributive share, in case of survival, cannot be defeated by any will.
 
 Doyle
 
 v.
 
 Doyle, Jr.,
 
 50 Ohio St., 330, 34 N. E., 166.
 

 This distinction is clearly recognized in the case of
 
 Smith
 
 v.
 
 Smith,
 
 57 Ohio St., 27, at page 37, 48 N. E., 28, 30, where Minshail, J., citing the case of
 
 Miller’s Ex’r.
 
 v.
 
 Miller, supra,
 
 as authority in support of contracts of this character, said of that case that the interest of a spouse was “not a mere expectancy or possibility. The right of a wife to a distributive portion of her husband’s personal estate, in case she survives him, cannot be defeated by the will of her husband. * * * It is then such an interest of the wife in the personal property of her husband, as that he
 
 *240
 
 cannot by will deprive her of it without her consent. With respect to such an interest a contract by the wife to release it to her husband for a fair and reasonable consideration paid her, might, with reason, be sustained against her, as was done in the above case. But this, as already pointed out,
 
 is not so in regard to the right of inheritance, which depends entirely upon the will of the ancestor. ”
 

 Unlike the case of an ordinary heir, there is in the execution of contracts of this- character between husband and wife both consideration and mutuality therefor. For this reason the rule denying efficacy to the release by an heir should not be applied, where these releases are entered into between husband and wife. In that respect the
 
 Needles case, supra,
 
 is distinguished from the case at 'bar. The principle broadly announced in the syllabus in.
 
 McGee
 
 v.
 
 Sigmund, supra,
 
 is mot adhered to by this court, and is therefore overruled.
 

 Were we to give equitable consideration to the facts in controversy, the widow would not be entitled, under the authorities cited, to the judgment she obtained in the lower courts. She entered into this, agreement releasing her dower and received from her husband the sum of $5,000, which she retained. Manifestly she cannot retain both her dower and the consideration paid to her for her release. If we were to consider the case from its equity side, we would be compelled to hold that, in accepting the consideration money, the widow is barred from asserting dower in the premises. For the reasons stated, the judgments of the lower courts are reversed, and the cause re
 
 *241
 
 manded to the court of common pleas for further proceedings.
 

 Judgment reversed.
 

 Marshall, C. J., Matthias, Day, Allen and Kinkade, JJ., concur.