SNYDER, ASSIGNEE, v. THE BUCKEYE STATE BUILDING & LOAN CO. ET AL.

*Husband and wife—Inchoate dower not released by contract of separation, when—Proof of knowledge of contents, voluntary execution and actual separation necessary—Divorce decree in foreign state not state of matrimonial domicile—Full faith and credit inapplicable where jurisdiction obtained by constructive service—Section 1, Article IV, U. S. Constitution—Dower in Ohio real estate not affected by foreign decree, when.*

1. A contract of separation between husband and wife purporting to discharge his lands from her inchoate dower estate is not, of itself, sufficient to accomplish that purpose. Such contract must be supported by proof that it was understood by the wife and was voluntarily signed by her, and its execution must be followed by an actual separation of the parties.

2. Where state in which divorce decree was rendered was not the state of matrimonial domicile, and jurisdiction over the defendant was obtained by constructive service, Section 1, Article IV, U. S. Constitution, requiring full faith and credit to be given in each state to judicial proceedings in every other state, does not apply.

3. Where foreign state has jurisdiction over one party to divorce action, courts of Ohio will recognize divorce decree, but, if the jurisdiction of such foreign state over

the defendant has been obtained by constructive service only, such decree will not affect the defendant's right of dower in real property in Ohio.

(Decided September 19, 1927.)

ERROR: Court of Appeals for Pickaway county.

*Mr. Irvin F. Snyder* and *Mr. Barton Walters,* for plaintiff in error.

*Messrs. Abernethy & Simpkins,* for defendants in error.

MAUCK, J.  On June 25, 1923, Irvin F. Snyder, as assignee of Job E. Renick, filed his petition in the probate court for an order to sell the real estate of his assignor.  Florence F. Renick, wife of the assignor, was made a party, and the value of her inchoate dower was determined and paid to her; the real estate having theretofore been sold free of the dower.  *Second Natl. Bank* v. *Renick,* 19 Ohio App., 278.  Thereafter, on March 31, 1925, Grace F. Renick was on her own motion made a party defendant.  She thereupon filed an answer and cross-petition alleging that she was the owner of an inchoate dower estate in the lands assigned by Job E. Renick, by virtue of the fact that she was married to Job on the 20th day of March, 1902, and that during their marriage Job was seized of an estate of inheritance in all the lands mentioned. To this cross-petition the assignee, after denying generally, set up a number of affirmative defenses. It was claimed that the cross-petitioner had been guilty of adultery, and because thereof a separation had ensued between her and her husband, and that by a separation agreement, and contemporane-

ous execution and delivery by the wife to the husband of a quitclaim deed, the wife had barred her claim for dower. By another defense it was claimed that in 1913 the assignor had been granted a divorce at Reno, Nev., on the ground of the adultery of his wife, and that by virtue of that decree she had ceased to be the wife of the assignor, and on that account had no present claim for dower. A further defense was that the separation agreement and the quitclaim deed, whatever their legal effect might have been, operated at least as an equitable estoppel against the present assertion of the dower estate. To the answer asserting the foregoing defenses the cross-petitioner replied that the separation agreement was ineffective because it lacked consideration; that it was obtained by fraud and coercion and was signed by her without any knowledge of her rights. The reply further charged that subsequent to the execution of such agreement she and her husband continued to live together as husband and wife. She also pleaded that the divorce obtained from her by the assignor, at Reno, was obtained by fraud. The plaintiff assignee demurred to this reply. The probate court overruled the demurrer and trial was had upon the issues of fact. The case was then appealed to the common pleas, in which court the cross-petition was found to be true and dower was decreed to Grace F. Renick, as prayed for by her. Error is now prosecuted to this court to reverse the judgment of the common pleas.

One of the assignments of error urged in this court is the failure of the common pleas to sustain the demurrer of the plaintiff to the reply of the

cross-petitioner. An inspection of the transcript shows that this question was raised in the probate court, but not in the common pleas. The ground upon which the demurrer was urged, however, went to the jurisdiction of the probate court, and that question was not waived by failure to have the demurrer again passed upon by the common pleas.

The probate court had jurisdiction. No one questions that that court has power to order the sale of real estate assigned by insolvent debtors, and no one questions the power of that court to determine and order paid the value of inchoate dower estates in such lands. The plaintiff's position was that before Grace F. Renick could maintain in the probate court her claim for dower she should first have secured in a direct action in the common pleas a decree setting aside the contract of separation and the quitclaim deed made in 1912. This position is untenable. So far as the quitclaim deed is concerned, it may be said, once for all, that it was wholly ineffective. If one can conceive of the wife transferring to her husband by quitclaim deed her inchoate right of dower, it must be apparent that she at once becomes reinvested with a like dower estate in the same property by virtue of the continuing marriage. The proposition is so well settled that dower vests by law and not by contract, that no authorities need be cited. If on March 6, 1912, Grace F. Renick transferred her dower estate by quitclaim deed to her husband, the law clearly, on March 7, 1912, reinvested her with dower, and the deed of the previous day was thereafter an absolute nullity. It required the action of no court to determine and decree its uselessness.

Neither was the wife bound to set aside the separation agreement as a preliminary to her asserting her right to dower. Since *Hoagland* v. *Hoagland,* 113 Ohio St., 228, 148 N. E., 585, husband and wife contemplating a separation may enter into an engagement by which each may release the other's property from a claim for dower. But that case only goes to the power of husband and wife to contract with each other. The contract of separation does not of itself destroy the dower estate. The writing evidencing it is not self-sufficient. It may or may not accomplish that end. To be effective it must have been freely entered into and fairly understood by the wife whose rights are being thereby barred, and it must be followed by a separation of the parties signing it, and these elements in the case are bound to be proved by those attempting to defeat the wife's dower, and in the absence of such proof the contract is ineffective. *Garver* v. *Miller,* 16 Ohio St., 527. The cross-petitioner, therefore, was not bound to avoid either the quitclaim deed or the separation contract preliminary to the assertion of her right to dower.

Upon the trial of the case in the common pleas an unusual state of facts developed. Job E. Renick and Grace F. Renick were married in 1902. Immediately prior to March 6, 1912, the wife confessed to the husband that she had been guilty of adultery. On the day mentioned the husband, having first cut the telephone wire leading from the family residence, and then by a trick deprived the wife of the use of the horse, which she might have used to leave the house to confer with friends or counsel, went with his attorney to the family

residence and there induced the wife to sign the separation agreement now relied upon. The evidence shows that she was not informed of her rights in the premises, nor given any opportunity to consult with others who might be informed. The contract of separation was therefore not entered into fairly. Not only was the method of securing the wife's signature unfair, but the amount allowed her by contract, in view of the fact that she was left with a group of children to support, was grossly inequitable. Our further view, however, is that regardless of the terms of the separation contract, and the manner in which it was secured, it was not in fact a contract of separation. The testimony fairly shows that the parties thereafter lived together as husband and wife. They resided in the same house. A child was born to the union a year after the so-called separation contract was signed. We accordingly follow the well-considered opinion of the common pleas in holding that the written agreement of March 6, 1912, was ineffective in so far as it attempted to bar the wife from dower in her husband's real estate.

On April 9, 1912, Job filed his petition for divorce in the common pleas of Pickaway county, in which he prayed for a divorce from Grace on account of the latter's adultery, and on June 22 filed a supplemental petition in the same case, setting out additional delinquencies of the same character. This supplemental petition was filed just about the time that the last child of these parties was conceived. Thereafter this action for divorce in Pickaway county was dismissed by the plaintiff, who some time later on went to the state of Nevada, in which

state on October 6, 1913, he filed his action for divorce, setting forth the same grounds for divorce that he had pleaded in the Pickaway county case. Constructive service was had upon the defendant, who made default. Whereupon the Nevada court, having upon testimony found the complaint true, including the averment that Job was a resident of Nevada, on December 22, 1913, decreed a dissolution of the marriage between Job E. Renick and Grace F. Renick, and decreed that each of said parties was "freed and absolutely released from the bonds of matrimony and all the obligations thereof." The cross-petitioner in the present action claims the right to attack this decree on the ground that Job was not in fact a resident of Nevada, notwithstanding the decree found him to be such resident. This right is asserted on the authority of *Van Fossen* v. *State*, 37 Ohio St., 317, 41 Am. Rep., 507. The case cited, however, does not sustain that contention. In that case Van Fossen relied upon a pretended decree of divorce rendered in Colorado. That state at that time was so hospitable to "fugitives from matrimonial justice" that it undertook to divorce parties, both of whom were nonresidents of that state, if the cause for divorce originated in that state. Its decree did not necessarily find that either party was domiciled in the state. It only found that Colorado was the venue of the matrimonial offense. The court in that case having, therefore, not concluded the question of domicile, that question was left open for determination in the Ohio courts when the validity of the Colorado case came in question. The *Van Fossen case* does not sustain the theory that the decree of the court necessarily

finding a fact requisite to sustain the decree can be impeached in a later proceeding for the purpose of annulling the decree and restoring the marriage relation. In such case the rule in Ohio is that the decree once entered stands impregnable even to a charge of fraud. It was held in *Parish* v. *Parish,* 9 Ohio St., 534, 75 Am. Dec., 482, that public policy required that "a judgment or decree which affects directly the status of married persons, by sundering the matrimonial tie, and thereby enabling them to contract new matrimonial relations with other and innocent persons, should never be reopened. Such a course would endanger the peace and good order of society, and the happiness and well-being of those who, innocently relying upon the stability of a decree of a court of competent jurisdiction, have formed a connection with the person who wrongfully, perhaps, procured its promulgation."

This principle was reasserted and emphasized in *Bay* v. *Bay,* 85 Ohio St., 417, 98 N. E., 109. Both the *Parish case* and the *Bay case* involved divorces apparently fraudulently obtained in this state, but the principle applies as well to decrees obtained in other states. It was of an Indiana decree that the court said in *Cox* v. *Cox,* 19 Ohio St., 502, 511, 2 Am. Rep., 415, that public policy equally requires the recognition of the validity of foreign decrees. We accordingly hold that it was incompetent in this case to show that the Nevada decree was invalid because of the fraud claimed to have been practiced on the courts of that state.

Granted, then, that the Nevada decree effectively dissolved the marital ties of Job and Grace Renick, what effect is to be ascribed to that decree on the

inchoate right of dower theretofore held by Grace in the husband's real estate in Ohio?

Vast difficulties have been experienced in different jurisdictions in determining the effects of a decree of divorce beyond the borders of the state of its rendition. The objection to a policy that permits a man to be deemed married in one jurisdiction and single in another is obvious.

Section 1, Article IV, of the U. S. Constitution, requiring that full faith and credit shall be given in each state to the judicial proceedings of every other state, has been frequently invoked to the end that extra territorial effect be given to decrees of divorce. It has been determined that this provision requires the state courts to recognize and enforce a decree of divorce granted by the courts of the matrimonial domicile, *Atherton* v. *Atherton,* 181 U. S., 155, 21 S. Ct., 544, 45 L. Ed., 794; *Thompson* v. *Thompson,* 226 U. S., 551, 33 S. Ct., 129, 57 L. Ed., 347, and similarly must the state court enforce such a decree if the state of its rendition was the domicile of one party thereto and personal service was had on the other party, *Cheever* v. *Wilson,* 76  U. S., (9 Wall.), 108, 19 L. Ed., 604. Where, however, the state in which the decree was rendered  was not the state of the matrimonial domicile, and jurisdiction  over the defendant was obtained by constructive service, a different rule applies. *Haddock* v. *Haddock,* 201 U. S., 562, 26 S. Ct., 525, 50 L. Ed., 867, 5 Ann. Cas., 1.  In such case the provision of the Federal Constitution does not operate.

Prof. Schofield, in his work on Constitutional Law and Equity (Volume 1, p. 153), says that the logical extension of the doctrine of the *Haddock*

*case* is that a decree of divorce that is not capable of being compulsorily enforced in every state of the Union is a nullity and unenforceable even in the state of its rendition. While this is a possible development of the *Haddock case,* and would, if adopted, avoid the present anomalous situation that renders a bigamist in one jurisdiction a law-abiding citizen in another, and a bastard in one state a legitimate child in another state, it is a position not yet taken by either the Supreme Court of the United States or by the Supreme Court of Ohio, and one not necessary to be taken in this case. So far as the *Haddock case* went it was to leave a state at liberty to give a decree obtained on constructive service in a state other than that of the matrimonial domicile as much or as little consideration as such state might desire.

Some of the states by statute recognize divorce decrees so rendered to be entitled to full force. Others, in the absence of a statute, give them such recognition as a matter of comity. In other states the decree is held to be a nullity. Ohio takes a middle course. Long before the *Haddock case,* Ohio courts had determined the public policy of this state to be that where one state had jurisdiction over one of the parties to the marriage, and undertook to dissolve the marriage, this state would recognize the power of such other state to so dissolve it, but while a decree of divorce so rendered would be recognized, because required by public policy, the state rendering it would not be permitted to project its jurisdiction into this state by constructive service and thereby affect property

rights arising in Ohio by operation of Ohio Law. *Mansfield* v. *McIntyre,* 10 Ohio, 27; *Cox* v. *Cox,* 19 Ohio St., 502, 2 Am. Rep., 415; *Woods* v. *Waddle,* 44 Ohio St., 449, 8 N. E., 297; *McGill* v. *Deming,* 44 Ohio St., 645, 11 N. E., 118; *Doerr* v. *Forsythe,* 50 Ohio St., 726, 35 N. E., 1055, 40 Am. St. Rep., 703. After the *Haddock case* the principle followed in the cases cited was reaffirmed and the policy adhered to. *Bay* v. *Bay,* 85 Ohio St., 417, 98 N. E., 109.

In the case at bar the dower of Grace Renick in the real estate of Job vested by operation of law. The Nevada court had no power by constructive service to divest her thereof.

The argument that Grace has been guilty of some laches in failing to sooner assert her rights in the premises is not sound. She could not, as has been pointed out, maintain an action here to set aside the Nevada decree. She was under no obligation to avoid the contract of separation until that contract and such extrinsic facts as were necessary to give it vitality were set up to defeat her claim. She could not have maintained an action for her inchoate right of dower until the assignment of Job gave her a right to realize thereon. Nor does her delay in proceeding, or her actions otherwise, work an estoppel against the cross-petitioner. No creditor appears to have loaned Job a dollar on account of anything done by Grace or anything left undone by her. No language or conduct of her appears to have influenced any one now resisting her claims. Estoppel does not proceed from the conduct alone of the party against whom

it is urged.   To be effective another must have been thereby misled to his prejudice.

The judgment of the common pleas is affirmed.

*Judgment affirmed.*

MIDDLETON and ALLREAD, JJ., the latter of the Second Appellate District sitting in place of SAYRE, P. J., concur.