LARRICK *v.* WALTERS.

(Decided November 26, 1930.)

*Mr. George D. Dugan, Mr. W. H. Smith* and *Mr. E. P. McGinnis,* for plaintiff in error.

*Mr. U. H. Buckey,* for defendant in error.

Farr, J. This cause is here on error. The action below was for necessities in the way of food, clothing and care furnished by defendant in error, J. Evan Walters, to Ella May Larrick, alleged to be the wife of William H. Larrick, plaintiff in error.

The issues were joined in the court below, after which the cause came on to be heard to the court without the intervention of a jury, and resulted in a judgment and finding in favor of plaintiff below in the sum of $1,734, or $6 per week for 289 weeks between September 1, 1923, and March 19, 1929; and from that judgment error is prosecuted in this court upon the ground that it is contrary to the evidence and the law.

The important facts are that William H. Larrick and Ella May Larrick were married in Noble county in 1901, of which marriage four sons were born to them between the date of marriage and the year 1911.

Mrs. Larrick became insane, and was sent to the hospital for the insane at Athens, Ohio, May 1, 1911.

On the 19th day of October, 1920, Mrs. Larrick was sent on a trial visit to the home of her mother, Lavina Heddleson, in Washington county, this state, and remained with her mother until her mother's death in May, 1922.

On the 30th day of June, 1921, while at her mother's home, a notice was sent in due form to the probate court of Noble county, by the superintendent of the State Hospital at Athens, that Mrs. Larrick was discharged as improved.

Upon the death of her mother, Mrs. Larrick was

taken to the home of her half-sister, Mrs. Sarah A. Walters, wife of defendant in error, where she has remained until the present time.

Prior to September 1, 1923, J. Evan Walters, defendant in error, husband of Sarah A. Walters, gave notice to plaintiff in error that he would expect him to pay for the food, clothing and care of Mrs. Larrick.

It is disclosed that Larrick began an action for divorce in Noble county in 1917, which was refused to him, and his petition dismissed on the 12th day of November of that year.

However, a little later in the spring of 1918, Larrick went to the state of Washington, where, on September 29, 1919, he obtained a divorce from his unfortunate wife, on the ground of ''chronic dementia,'' the custody of the children being awarded to him, but there was no allowance of support or alimony for his wife.

In the fall of 1920 he returned to his home in Noble county, and in 1929 this action was begun to recover for the food, clothing and care of his wife, under favor of Section 8003 of the General Code, which reads as follows: ''If the husband neglects to make adequate provision for the support of his wife, any other person, in good faith, may supply her with necessaries for her support, and recover the reasonable value thereof from the husband.''

It may be noted, also, that subsequent to the time this action was brought against Larrick, Mrs. Walters, as guardian, began a suit for an allowance of alimony for her ward, Mrs. Larrick, the result of which was that an order was made in the sum of $1,000.

It is insisted, however, that the defendant in error is not entitled to recover under Section 8003, General Code, for the reason, so it is claimed, that during the time Walters cared for Mrs. Larrick she was Larrick's divorced wife, and it is urged that under the "full faith and credit clause" of the Constitution of the United States the divorce granted to the husband in the state of Washington must be recognized in Ohio, and, if not for that reason, that it should be recognized under the rule of comity of states.

The divorce was granted to Larrick upon the ground, as above stated, of what is termed "chronic dementia" of his wife, and this ground of divorce is not recognized by the law of Ohio.

In this connection, pages 512, 513, 514, 515 and 516, of 9 Ruling Case Law, become of interest, but will not be quoted here.

The case of *Haddock* v. *Haddock,* 201 U. S., 562, 26 S. Ct., 525, 50 L. Ed., 867, 5 Ann. Cas., 1, is applicable in this case, and it is there held that the mere domicile within the state of one party to the marriage does not give the courts of that state jurisdiction to render a decree of divorce enforceable in all the other states by virtue of the full faith and credit clause of the Federal Constitution against a nonresident who did not appear, and was only constructively served with notice of the pendency of the action.

The foregoing was a case widely discussed, and attracted much interest on the part of the bench and bar throughout the United States, and the principle there announced may well be applied in the instant case, because the state of Washington was not

the matrimonial domicile of these parties and service was had by publication only, and the wife being insane of course did not appear or in any way consent to the decree, nor did anyone for her. Mr. Justice White, speaking for the court in the above case, says at page 570 of 201 U. S., 26 S. Ct., 525, 527:

"Fifth. It is no longer open to question that where husband and wife are domiciled in a State there exists jurisdiction in such State, for good cause, to enter a decree of divorce which will be entitled to enforcement in another State by virtue of the full faith and credit clause. It has, moreover, been decided that where a *bona fide* domicil has been acquired in a State by either of the parties to a marriage, and a suit is brought by the domiciled party in such State for divorce, the courts of that State, if they acquire personal jurisdiction also of the other party, have authority to enter a decree of divorce, entitled to be enforced in every State by the full faith and credit clause. *Cheever* v. *Wilson,* 9 Wall. 108 [19 L. Ed., 604]."

"Sixth. Where the domicil of matrimony was in a particular State, and the husband abandons his wife and goes into another State in order to avoid his marital obligations, such other State to which the husband has wrongfully fled does not, in the nature of things, become a new domicil of matrimony, and, therefore, is not to be treated as the actual or constructive domicil of the wife; hence, the place where the wife was domiciled when so abandoned constitutes her legal domicil until a new actual domicil be by her elsewhere acquired. This

was clearly expressed in *Barber* v. *Barber,* 21 How. 582 [16 L. Ed., 226]."

Two things are apparent from the foregoing: First, there must be personal service of the other party. And, second, the wife's domicile does not change until a new actual domicile is acquired elsewhere.

And it is further observed at page 572 of the *Haddock case* that: "b. As New York was the domicil of the wife and the domicil of matrimony, from which the husband fled in disregard of his duty, it clearly results from the sixth proposition that the domicil of the wife continued in New York. c. As then there can be no question that the wife was not constructively present in Connecticut by virtue of a matrimonial domicil in that State, and was not there individually domiciled and did not appear in the divorce cause, and was only constructively served with notice of the pendency of that action, it is apparent that the Connecticut court did not acquire jurisdiction over the wife within the fifth and seventh propositions; that is, did not acquire such jurisdiction by virtue of the domicil of the wife within the State or as the result of personal service upon her within its borders."

The foregoing is practically conclusive in the instant case.

English cases are also in harmony with the foregoing: *Shaw* v. *Gould,* L. R., 3 H. L., 55; *Harvey* v. *Farnie,* L. R., 8 App. Cas., 43.

Larrick merely took up his residence temporarily in the State of Washington for the purpose of a divorce, because he returned to his home soon after the divorce was granted, and mere residence may

always be distinguished from legal domicile, and mere residence within a particular State in a divorce cause is not sufficient to confer jurisdiction upon a court of that State to dissolve the marriage relation existing between a plaintiff and a non-resident defendant and to determine all rights between said parties; *Andrews* v. *Andrews,* 188 U. S., 14, 23 S. Ct., 237, 47 L. Ed., 366; *Streitwolf* v. *Streitwolf,* 181 U. S., 179, 21 S. Ct., 553, 45 L. Ed., 807; *Bell* v. *Bell,* 181 U. S., 175, 21 S. Ct., 551, 45 L. Ed., 804.

The courts of last resort in many of the States have announced or adhered to the same rule as announced in the *Haddock case.* Practically the same issue as here involved is determined in *Snyder, Assignee,* v. *Buckeye State Building & Loan Co.,* 26 Ohio App., 166, 160 N. E., 37, where it is held in the second proposition of the syllabus as follows: "Where state in which divorce decree was rendered was not the state of matrimonial domicile, and jurisdiction over the defendant was obtained by constructive service, Section 1, Article IV, U. S. Constitution, requiring full faith and credit to be given in each State to judicial proceedings in every other State, does not apply."

The opinion is well reasoned by Mauck, J., and is of interest in this connection.

A case also of interest in this jurisdiction is that of *Doerr* v. *Forsythe, Admx.,* 50 Ohio St., 726, 35 N. E., 1055, 40 Am. St. Rep., 703, where it is held as follows: "A divorce obtained by a husband from his wife in another State, without service other than by publication, and she being at the time a citizen

of and residing in this State, does not in any way affect her property rights in this State."

It was argued in the presentation of this cause that the Supreme Court of Ohio evidently did not intend to extend the principle announced in the above case beyond that announced in the cases of *Mansfield* v. *McIntyre*, 10 Ohio, 27; *Woods* v. *Waddle*, 44 Ohio St., 449, 8 N. E., 297; *McGill* v. *Deming*, 44 Ohio St., 645, 11 N. E., 118, which relate to dower and alimony.

However, it is clear that if the Supreme Court of Ohio desired to change or abrogate the principle announced in the above case of *Doerr* v. *Forsythe*, it has had both time and opportunity to do so, but it then and ever since has failed so to do, and announces practically the same principle in *Bay* v. *Bay*, 85 Ohio St., 417, 427, 98 N. E., 109. It is similarly held in *Kundert* v. *Kundert*, 24 Ohio App., 342, 350, 156 N. E., 237, and *Spaulding* v. *Spaulding*, 11 Ohio App., 143.

It will be recalled that after Mrs. Larrick's ten years of married life, in which she bore four sons to Larrick, she became insane—possibly the price she paid for motherhood. It is also disclosed that after her removal to the hospital Larrick failed to visit or care for her in any way, or to contribute to her support, and that in 1917, when she may have begun to manifest some evidence of improvement, he sought a divorce from her in the courts of Noble county; but, having been denied the object of his ambition in this behalf, he emigrated to a western State, where he evidently felt that acquaintances would be fewer and the opportunities better to perpetrate this wrong upon his unfortunate wife.

It is not to be wondered that a court not sufficiently advised in the premises should have granted the decree as it did, but surely this man in at least comfortable circumstances should not be aided by the law of his own State in unloading a responsibility which by every rule of right and reason of decency belongs to him, and be permitted to place it upon other shoulders, especially since it is said that he is the owner of some 600 acres of land in Noble county, and of properties in Ava, Pleasant City and Zanesville.

The full faith and credit clause of the Federal Constitution or the rule of comity of States was never meant or intended to aid in the perpetration of a fraud or a wrong, such as would be accomplished by permitting Larrick to escape responsibility for the care and support of his insane wife; and for that purpose the divorce granted in the State of Washington must be held ineffective, especially since the services rendered were prior to the allowance of alimony. Nor will the rule of ''comity of States'' suffice, for that is simply a phrase designating the practice by which the courts of one State follow the decision of another, on a like question, though not bound by the law of precedents to do so. The rule of comity of States is not a requirement but is optional, and may or may not be recognized. Therefore Ohio courts may, in the instant case, regard the decree of divorce as ineffective so far as property rights between these parties are concerned.

Therefore, by reason of the manner of obtaining the divorce, by reason of the holding in the above case of *Haddock* v. *Haddock,* and by reason of the

372

wise provision of Section 8003, General Code, and the principle announced in the above case of *Doerr* v. *Forsythe,* the judgment in this cause should be affirmed, and it is so ordered.

*Judgment affirmed.*

POLLOCK, J., concurs.