**BREWER, Plaintiff-Appellant, v BREWER, Defendant-Appellee.**

Ohio Appeals, Second District, Montgomery County.

No. 1967. Decided April 9, 1948.

Oldham & Oldham, Carl W. Norman, Dayton, for plaintiff-appellant. ·

Horace W. Baggott, J. Farrell Johnston, Dayton, for defendant-appellee.

## OPINION

By WISEMAN, PJ:

This is an appeal on law from the judgment of the Common Pleas Court of Montgomery County, Ohio. The plaintiff was granted a decree of divorce on the ground of adultery. The court set aside the separation agreement entered into between the parties and made a division of property on a different basis than that stipulated in the agreement.

The assignments of error filed by the plaintiff-appellant all relate to the action of the trial court in granting to the defendant-appellee property of a greater value than that stipulated in the separation agreement.

The validity of the separation agreement which is authorized by §8000 GC, is controlled by the provisions of §7999 GC which contains the positive limitation that such an agreement shall be subject "to the general rules which control the acts of persons occupying confidential relations with each other."

The trial court is under no compulsion to approve the agreement of the parties relative to the division of the property. **Volume 14 O. Jur. page 479.** The court will approve such agreement if the evidence shows that the provisions of said agreement are fair, just, and reasonable. **Hoagland v Hoagland, 113 Oh St 228, 148 N. E. 585; Gaver, Ex. v Miller, 16 Oh St 528; In Re; Shafer, 77 Oh Ap 105, 65 N. E. (2d) 902; Starke v Stark, 8 Abs 287.**

The trial court found that the agreement entered into between the parties "was not fair, reasonable, or just to the defendant in view of all the circumstances of the case and of the parties at the time the agreement was made."

The evidence in this case shows that the marriage took place January 25, 1941; that the appellant entered into the armed services on May 23, 1944 and was sent overseas on August 27, 1945; that he returned on May 5, 1946, and on and after May 12, 1946 continued to live with the defendant until the separation which occurred on March 7, 1947. It is not disputed that a child which was born to the wife on November 19, 1946 was not her husband's child. A positive disclosure of this fact was made to the husband, the appellant herein, on March 5, 1947. On the evening of that day, the husband and the wife began a discussion of their marital difficulties growing out of the fact of the admission on the part of the wife on that evening that her husband was not the father of her child. This discussion continued without let up from six P. M. on March 5th until late afternoon on March 7th without either party having any sleep or rest. On March 6th the husband took his wife to the home of his parents where he required her to make an admission relative to the parentage of the child. Later that evening, he called her parents to their home and required her to make such admission to them. Still later in the evening, he called the father of the child to their home and secured an admission from him that he was the father of the child. At this time, the plaintiff secured a large hunting knife which he had brought with him from service in the Phillipine Islands and placed it near the throat of the father of the child stating that he ought to cut his head off and made other statements to the effect that he ought to kill both his wife and the father of the child. Still later in the evening he, together with the father of the defendant, drove to the home of the father of the child and disclosed the facts to his wife, who returned with them to the Brewer home where the discussion was continued until early morning of March 7th. The testimony shows that during this discussion the husband spoke in a loud voice, paced around over the house, and was in a very angry mood. In the early afternoon of March 7th, the husband and wife went to the office of the attorney for the husband and after several hours conference the separation agreement was executed. The evidence further shows that the matter of division of property was not discussed between the parties and other members of the family. On the morning of March 7th a property settlement was discussed between the parties at which time the husband stated to the wife that she could not expect to get

anything out of the property and that he would allow her to take her clothes and would "give her $5,000.00 as a gift." On March 8th the husband made a transfer of property to the wife of the value of $5,000.00 according to the agreement.

The evidence further shows that from six o'clock on the evening of March 5th until the contract was signed in the office of the attorney for the husband at about 5:00 P. M. on March 7th, the wife was not given an opportunity to seek legal advice and had not discussed her legal rights with any other members of the family. During this time she was not out of the presence of her husband except for about an hour in the evening of March 6th, when he drove to the home of the father of the child. The husband at no time advised her or intimated to her that she should seek independent advice.

The evidence shows that from a date shortly after the marriage until the separation, the wife kept a strict accounting of all monies received by either her or her husband and all money expended. The wife was employed a substantial portion of the time during the marriage relation. The evidence shows that they had a common understanding whereby both contributed all of their earnings to a common fund and after the expenses were paid, investments were made in their joint names. Inasmuch as Postal Savings Certificates could not be issued in their joint names such certificates in the amount of $2,500.00 each, were taken in their individual names. Upon the date of the separation there stood in the individual name of the wife assets of the value of $2,525.00 and in the individual name of the husband $2,650.00 and in their joint names $14,309.69. There was evidence introduced on behalf of the defendant, which was not seriously disputed, from which the trial court could reasonably conclude that the defendant had contributed to the sum total of assets possessed by the husband and wife, approximately $8,430.00 which consisted of her personal earnings and $800.00 in cash which she contributed at the time the residence was purchased which was taken in their joint names. This residence was later sold together with some household goods at a profit of $2,277.24. She contributed $1,200.00 or more in the way of allotment checks which she received while her husband was in the service, and other property was sold in which she possessed a joint interest. She testified, which was not disputed by the husband, that they regarded all of their property as jointly owned.

In view of this evidence we are of the opinion that the trial court was justified in making its finding that the division of property stipulated in the separation agreement was not

fair, reasonable, and just to the defendant. Furthermore, we are of the opinion that an undue advantage was taken of the defendant in requiring her to enter into the separation agreement at the end of a two day discussion of their marital difficulties during which time she had little or no opportunity to discuss her property rights with other members of her family or seek independent legal advice. We can easily understand the emotional disturbance of both the husband and wife during the discussion because of the disclosure of adulterous conduct on the part of the wife. However, such misconduct on the part of the wife does not relieve the husband of fair dealing with respect to any property settlement. Because of the dominating influence which a husband exercises over the wife, transactions between them to be valid, particularly as to the wife, must be fair and reasonable and voluntarily and understandingly made. Such transactions are closely scrutinized to prevent the wife from being unfairly treated by the improper conduct of the husband. Volume 26 Am. Jur. page 876. It has been held that whenever the advice of counsel would be of real assistance to the wife in deciding whether to enter into an agreement with the husband, it is his duty to advise her to seek such counsel. Volume 26 Am. Jur. page 687; 123 A. L. R. 1505. In **Snyder v Buckeye State Bldg., & L. Co., 26 Oh Ap 166,** 160 N. E. 37, the facts were similar to those presented in the instant case. The court on page 170 stated:

"Upon the trial of the case in the common pleas an unusual state of facts developed. Job E. Renick and Grace F. Renick were married in 1902. Immediately prior to March 6, 1912, the wife confessed to the husband that she had been guilty of adultery. On the day mentioned the husband, having first cut the telephone wires leading from the family residence, and then by a trick deprived the wife of the use of the horse, which she might have used to leave the house to confer with friends or counsel, went with his attorney to the family residence and there induced the wife to sign the separation agreement now relied upon. The evidence shows that she was not informed of her rights in the premises, nor given any opportunity to consult with others who might be informed. The contract of separation was therefore not entered into fairly."

In the instant case, the trial court set aside the property settlement and decreed to the husband $2,650.00 being the property held by him in his individual name, and decreed to the wife $2,525.00 being the property held in her individual

name, and divided equally between them the property held jointly by them. It is contended by the appellant that this division was not equitable in view of the wrongful conduct of the wife. Without condoning the misconduct of the wife, the trial court was acting within its authority under §11993 GC which in part provides:

"When the divorce is granted by reason of the aggression of the wife, the court may adjudge to her such share of the husband's real or personal property, or both, as it deems just,"

Because of her aggression the wife in this case was denied any right to alimony. This is one of the penalties which she must pay for her misconduct. However, the law of this state permits the court to give to the wife a share of the husband's property even though the divorce is granted to the husband because of the wife's aggression.

In the case at bar, a portion of the property decreed to the wife in reality can be considered to be her own property. No effort was made by the wife to create a separate estate. Any separate estate she might have created during the marriage relation became part of their joint property. Under all the circumstances and the evidence in this case we are of the opinion that the judgment of the trial court was fair, reasonable, and just and that division of the property between the parties was just and equitable.

Finding no error in the record, judgment is affirmed.

MILLER and HORNBECK, JJ, concur.