[Cite as *Pettitt v. Schaffner*, 2024-Ohio-5180.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Barbara A. Pettitt, Administrator of the Estate of Donald G. Pettitt, | : | |
| | : | |
| Plaintiff-Appellant, | | No. 23AP-661 |
| | : | (Prob. No. 604755A) |
| v. | | |
| | : | (REGULAR CALENDAR) |
| Jean A. Schaffner, | | |
| | : | |
| Defendant-Appellee. | | |
| | : | |

D E C I S I O N

Rendered on October 29, 2024

**On brief:** *Matthew W. Donald* and *John A. Yaklevich*, for appellant. **Argued:** *Matthew W. Donald*.

**On brief:** *James L. Dye*, for appellee. **Argued:** *James L. Dye*.

APPEAL from the Franklin County Probate Court

BOGGS, J.

{¶ 1} Plaintiff-appellant, Barbara A. Pettitt, Administrator of the Estate of Donald G. Pettitt ("Estate"), appeals an order from the Franklin County Probate Court, which granted a motion for summary judgment in favor of defendant-appellee, Jean A. Schaffner. For the reasons stated below, we sustain the Estate's assignment of error, reverse the trial court's judgment, and remand for further proceedings.

## I. PROCEDURAL HISTORY AND FACTS

{¶ 2} On September 1, 1962, Donald G. Pettitt and Barbara A. Pettitt were married. By 1988, Donald and Barbara began living separately. In 1993, Donald bought a house at 538 Stanberry Avenue in Columbus, Ohio ("the Property"), where he resided with Jean. The dispute in this action concerns ownership of the Property.

No. 23AP-661

{¶ 3} On October 12, 2017, Donald executed a document captioned Agreement to Resolve Property and Other Matters Between Donald G. Pettitt and Barbara Pettitt ("the Agreement"). The Agreement stated that although Donald and Barbara were still married, they had been separated for over 30 years. Donald agreed to transfer any interest he had in the home at 1811 West Market Street, Baltimore, Ohio to Barbara, while Barbara agreed to transfer any interest she had in the Stanberry Avenue property to Donald. Donald also agreed to maintain Barbara as the pay on death beneficiary for several retirement accounts and life insurance policies. Donald also agreed to reimburse Barbara for the full cost of real estate taxes and insurance for the house in Baltimore and to pay Barbara the sum of $1,050 each month. Both Donald and Barbara agreed that they would not seek to take a claim against the other's estate or seek from the other's estate any property or money, notwithstanding their rights to seek a Social Security benefit upon the other's death. On October 24, 2017, Barbara signed the Agreement.

{¶ 4} On November 8, 2017, Barbara executed a quitclaim deed transferring any and all interest she had in the Property to Donald. On November 11, 2017, Donald signed a transfer on death designation affidavit for the Property, designating Jean to receive its title upon his death.

{¶ 5} Donald died intestate in Franklin County on April 24, 2019. He was survived by Barbara, their three adult children, and Jean. At the time of his death, Donald was still married to Barbara, though they had continued to live separately.

{¶ 6} On July 8, 2020, Barbara became the administrator of Donald's estate. On August 21, 2020, Barbara filed a complaint in the Franklin County Probate Court, seeking a declaratory judgment that the transfer on death designation affidavit for the Property was null and void because Barbara had not released her dower interests, and that the Property should be treated as a probate asset.[1]

{¶ 7} Jean filed an answer and counterclaim seeking a quiet title to the Property. Jean argued that Barbara had relinquished her rights to the Property by the quitclaim deed pursuant to the Agreement with Donald.

{¶ 8} On June 7, 2021, the Estate moved for summary judgment on its complaint and Jean's counterclaim. On June 28, 2021, Jean also moved for summary judgment.

---

[1] On April 14, 2021, Barbara filed an amended complaint noting her role as Administrator of the Estate of Donald G. Pettitt.

No. 23AP-661

{¶ 9} On October 4, 2023, the trial court issued an order granting Jean's motion for summary judgment and denying the Estate's motion for summary judgment. The trial court found that, under R.C. 3103.06, the Agreement would have been a valid separation agreement if it had included language that the parties agreed to live separate and apart. While the Agreement did not include that language, Barbara and Donald lived separate and apart from at least 2017 until the time of his death and did not cohabitate. The trial court reasoned that, under R.C. 2101.24(C) and under the trial court's power in equity, it had the authority to find that the Agreement was, in fact, a separation agreement, and that Barbara had the ability to extinguish her dower rights when she executed the quitclaim deed to the Property. The trial court then found that Donald signed the transfer on death designation affidavit to transfer the Property to Jean free from any encumbrance of Barbara's dower rights upon his death. The trial court ordered that the Property be transferred to Jean and not be considered an asset of Donald's estate.

{¶ 10} On November 3, 2023, the Estate filed this appeal.

## II. ASSIGNMENT OF ERROR

{¶ 11} The Estate argues one assignment of error:

> The trial court erred in denying [the Estate's] motion for summary judgment and erred in granting [Jean's] motion for summary judgment where no genuine issues of material fact existed and [the Estate] was entitled to judgment as a matter of law.

{¶ 12} The Estate argues seven sub-assignments of error:

> [1.] The Pettitts' "Agreement to Resolve Property and Other Matters" failed to convey Barbara Pettitt's dower interest to Donald Pettitt and [Jean] lacked standing to assert that document as a claim or defense.
>
> [2.] The trial court erred in ruling that the quitclaim deed validly transferred Barbara Pettitt's dower rights to Donald Pettitt.
>
> [3.] The trial court erred in ruling that the purported transfer on death affidavit transferred Donald Pettitt's interest in the property to [Jean].
>
> [4.] The probate court erroneously exceeded its equitable powers in awarding the property to [Jean] because equity follows the law.
>
> [5.] The probate court erred in adopting the Magistrate's finding that R.C. 5301.071(A) rendered the Donald Pettitt transfer on death affidavit valid.

No. 23AP-661

> [6.] The probate court erred or abused its discretion in denying the Estate's objections to the August 1, 2023 evidentiary hearing.

> [7.] The probate court apparently rendered its judgment on the basis of sympathy.

## III. LEGAL ANALYSIS

{¶ 13} This court reviews summary judgment under a de novo standard. *Estate of Sample v. Xenos Christian Fellowship, Inc.*, 10th Dist. No. 20AP-563, 2021-Ohio-3898, ¶ 9. Summary judgment is appropriate only when the moving party demonstrates: (1) no genuine issue of material fact exists, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds could come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence most strongly construed in its favor. Civ.R. 56(C); *State ex rel. Grady v. State Emp. Relations Bd.*, 78 Ohio St.3d 181, 183 (1997).

{¶ 14} As they are interrelated, we consider the Estate's first, second, third, and fifth sub-assignments of error in tandem. In these sub-assignments of error, the Estate argues that Donald's transfer on death designation affidavit is not valid because it is missing Barbara's signature and a statement that she is subordinating her dower rights, which the Estate claims were required because Donald and Barbara were still married and not legally separated. We agree.

{¶ 15} Pursuant to R.C. 2103.02, "[a] spouse who has not relinquished or been barred from it shall be endowed of an estate for life in one third of the real property of which the consort was seized as an estate of inheritance at any time during the marriage." Thus, when a married person purchases real property in Ohio, the non-titleholder spouse is entitled to a one-third dower interest in that real property unless that interest is relinquished or barred. *Std. Fed. Bank v. Staff*, 168 Ohio App.3d 14, 2006-Ohio-3601, ¶ 20-21 (1st Dist.). R.C. 5302.22(D)(3) states that a transfer on death designation affidavit shall include, among other things, a statement by an owner's spouse subordinating their dower rights:

> A statement by the individual executing the affidavit that the individual is the person appearing on the record of the real property as the owner of the real property or interest in the real property at the time of the recording of the affidavit and the marital status of that owner. *If the owner is married, the affidavit shall include a statement by the owner's spouse*

> *stating that the spouse's dower rights are subordinate to the vesting of title to the real property or interest in the real property in the transfer on death beneficiary or beneficiaries designated in the affidavit.*

(Emphasis added.)

{¶ 16} The language of R.C. 5302.22(D)(3) is clear and unambiguous and requires a property owner's spouse to sign and state they are subordinating their dower rights in a transfer on death designation affidavit. Given that Barbara and Donald were still married, the transfer on death designation affidavit does not meet the requirements of the statute.

{¶ 17} The trial court found, and Jean argues on appeal, that the Agreement constituted a separation agreement, thus terminating Barbara's dower rights in the Property. We note that a dower right may be extinguished by means of divorce or dissolution. R.C. 2103.02 ("Dower interest shall terminate upon the granting of an absolute divorce in favor of or against such spouse by a court of competent jurisdiction within or without this state."); R.C. 3105.10(D) ("Upon the granting of a divorce, on a complaint or counterclaim, by force of the judgment, each party shall be barred of all right of dower in real estate situated within this state of which the other was seized at any time during coverture."); R.C. 3105.65(B) ("A decree of dissolution of marriage has the same effect upon the property rights of the parties, including rights of dower and inheritance, as a decree of divorce."); *U.S. Bank, Natl. Assn. v. Fitzgerrel*, 12th Dist. No. CA2011-09-063, 2012-Ohio-4522, ¶ 13 ("Because a decree of dissolution has the same effect on dower rights as a divorce, the dissolution of a marriage also terminates a spouse's dower interest in real property.").

{¶ 18} Similarly, legal separation bars a party from any dower right. R.C. 3105.10(E) ("Upon the granting of a judgment for legal separation, when by the force of the judgment real estate is granted to one party, the other party is barred of all right of dower in the real estate and the court may provide that each party shall be barred of all rights of dower in the real estate acquired by either party at any time subsequent to the judgment.").

{¶ 19} None of those three options to terminate dower rights occurred here. Neither of the parties argue that Donald and Barbara were divorced or had their marriage dissolved. There is also no evidence in the record that Barbara and Donald sought a legal separation, and there is no judgment from a domestic relations court granting them a legal separation. While the trial court found that the Agreement served as a separation agreement, and Jean

now argues so on appeal, we disagree. R.C. 3105.10(E) conditions the termination of dower rights upon a *judgment* of legal separation. The statute reads:

> *Upon the granting of a judgment for legal separation*, when by the force of the judgment real estate is granted to one party, the other party is barred of all right of dower in the real estate and the court may provide that each party shall be barred of all rights of dower in the real estate acquired by either party at any time subsequent to the judgment.
>
> "Dower" as used in this section has the meaning set forth in section 2103.02 of the Revised Code.

(Emphasis added.) R.C. 3105.10(E).

{¶ 20} Absent a judgment for legal separation, the Agreement Barbara and Donald entered into could not extinguish Barbara's dower rights in the Property. While Jean argues on appeal that Barbara gave up any and all interest in the Property through the Agreement and the quitclaim deed, we do not agree. (Appellee's Brief at 8, 15, 17.) Prior to the effective date of S.B. 210 on March 23, 2023, postnuptial agreements were not valid in Ohio. *In re Estate of Taylor*, 3d Dist. No. 4-23-02, 2023-Ohio-2195; *Hoffman v. Dobbins*, 9th Dist. No. 24633, 2009-Ohio-5157; *Wright v. Cramer*, 2d Dist. No. 27586, 2018-Ohio-764. The former version of R.C. 3103.06, which was in effect at the time Barbara and Donald executed the Agreement and the quitclaim deed, stated that "[a] husband and wife cannot, by any contract with each other, alter their legal relations, except that they may agree to an immediate separation and make provisions for the support of either of them and their children during the separation." Under that statute, Barbara could not alter her legal relations with Donald, namely she could not extinguish her dower rights, through the Agreement, unless it was reduced to a judgment for legal separation.

{¶ 21} Similarly, we find that because Barbara and Donald were not legally separated, the quitclaim deed Barbara executed could not validly transfer her dower rights to Donald. *Du Bois v. Coen*, 100 Ohio St. 17, 23-24 (1919). Dower rights are vested by law, rather than through contract. *Snyder v. Buckeye State Bldg. & Loan Co.*, 26 Ohio App. 166, 169 (4th Dist.1927) ("[s]o far as the quitclaim deed is concerned, it may be said, once for all, that it was wholly ineffective. If one can conceive of the wife transferring to her husband by quitclaim deed her inchoate right of dower, it must be apparent that she at once becomes reinvested with a like dower estate in the same property by virtue of the continuing marriage."). Such is the case here, where Barbara executed a quitclaim deed, but without a

judgment of legal separation, her dower rights were not extinguished. We accordingly sustain the Estate's first, second, third, and fifth sub-assignments of error.

{¶ 22} In the Estate's fourth, sixth, and seventh sub-assignments of error, it argues that the trial court exceeded its powers in awarding the Property to Jean, it abused its discretion in considering the Agreement, and it awarded the Property to Jean on the basis of sympathy rather than law. As we have already determined that Barbara's dower rights were not extinguished and that the transfer on death designation affidavit purporting to transfer the Property to Jean upon Donald's death was void, we decline to address the Estate's fourth, sixth, and seventh sub-assignments of error, as they are now moot.

## IV. CONCLUSION

{¶ 23} For these reasons, we sustain the Estate's sole assignment of error. We reverse the judgment of the Franklin County Probate Court and remand this matter to that court for further proceedings consistent with this decision and the law.

*Judgment reversed;*
*cause remanded.*

LUPER SCHUSTER and EDELSTEIN, JJ., concur.

———————————