# STREITWOLF *v.* STREITWOLF.

ERROR TO THE COURT OF ERRORS AND APPEALS OF THE STATE OF NEW JERSEY.

No. 109. Argued and submitted November 14, 15, 1900. — Decided April 15, 1901.

A decree of divorce from the bond of matrimony, obtained in the State of North Dakota, in which neither party is domiciled, upon service by publication and in another State, is entitled to no faith and credit in that State.

AUGUST Streitwolf and Elizabeth Streitwolf were married at New Brunswick in New Jersey on June 3, 1877, and lived there as husband and wife until August 3, 1896. On August 17, 1896, the wife filed against the husband in the Court of Chancery in the State of New Jersey a bill for divorce for his extreme cruelty, and for alimony; a subpœna returnable August 29, 1896, was served upon the husband personally in New Jersey; and in November, 1896, after a hearing, an order was made for the payment of alimony *pendente lite.*

On August 9, 1897, the husband filed against the wife in the district court of the Sixth Judicial District of the State of North Dakota a suit for a divorce from the bond of matrimony for her extreme cruelty and habitual intemperance; and caused to be personally served on her in New Jersey on August 17, 1897, a copy of the summons and complaint therein, directing her to

answer within thirty days after service of the summons upon her, or be defaulted.

On August 19, 1897, the husband filed in the suit in New Jersey an answer denying the allegations of the wife's bill, but saying nothing of the suit in North Dakota.

On September 7, 1897, the wife filed in the suit in New Jersey a petition, supported by affidavits, for an injunction against the suit in North Dakota, denying the husband's allegations in that suit, alleging that the domicil of both parties was still in New Jersey, and that his pretended residence in North Dakota was wholly fictitious and fraudulent, and intended only to give a colorable jurisdiction to the court of North Dakota for the purpose of the suit therein; and further alleging that the wife had not in anywise appeared in that suit, and that a decree against her in that suit would be a bar to her suit in New Jersey, and that the practical effect, and doubtless the object of the proceeding, would be to withdraw the adjudication and settlement of her marital rights from the court of New Jersey and transfer the same to the court of North Dakota. On September 8, 1897, a temporary injunction was issued accordingly, to continue until the husband should have fully answered the bill and until the further order of the court.

On October 7, 1897, the husband submitted to the judge of the court in North Dakota his own *ex parte* deposition, and the *ex parte* depositions of other witnesses taken in the city of New York on October 4, 1897; and obtained from that court a decree of divorce from the bond of matrimony for his wife's cruelty and habitual intemperance, which recited that "the plaintiff now is and for more than ninety days prior to the commencement of this action has been in good faith a resident of the State of North Dakota," and that "the court has full power and jurisdiction, both of the subject-matter of the action, and the parties plaintiff and defendant therein."

On January 11, 1898, the wife filed against the husband in the Court of Chancery of New Jersey a supplemental bill, repeating the allegations of her petition for an injunction, and alleging the granting of the injunction, and its service upon the husband's counsel in New Jersey and in North Dakota on the 13th and

15th of September, 1897, and that the decree in North Dakota was void for want of jurisdiction of the subject-matter and of the wife as a party, and was procured by fraud and in contempt of the Court of Chancery of New Jersey.

In April, 1898, the husband filed an answer to the supplemental bill, alleging that at and for more than ninety days preceding the commencement of his suit in North Dakota, he was a resident and citizen and domiciled in good faith in that State; setting forth §§ 2737, 2742, 2743, 2755–2757 of the Civil Code of North Dakota of 1895; and insisting that the decree in North Dakota was a valid judgment, rendered with full jurisdiction over the subject-matter and the parties, and was entitled to full faith and credit under the Constitution and laws of the United States.

The wife filed a general replication to the answer. The evidence tended to show, and the Court of Chancery of New Jersey found, the following facts:

In November, 1896, the husband sold out his business in New Brunswick, rented the building and furniture to the grantee of the business, and went to New York and boarded there for a while, and then went to Europe on a pleasure tour, and returned to New York in the following March, and remained there until May 5, 1897. In April, 1897, negotiations were going on between him and his wife for a settlement of their difficulties, which entirely failed before the 1st of May. About that time he became acquainted with a firm of lawyers, Hoggatt & Caruthers, who had an office in New York, and were attorneys engaged in the business of procuring divorces; and he talked with them, and found that they had an office and a representative in Mandan, North Dakota. Streitwolf had never been in Mandan, knew nobody there, and had no connections, directly or indirectly, with Mandan, or with anybody in North Dakota. On May 6, 1897, without informing anybody where he was going, or that he intended to change his residence, he left New York and went to Mandan; arrived there on Sunday morning May 9, and in the afternoon of the same day was introduced by a travelling companion to one Voss, who represented Hoggatt & Caruthers in Mandan. He took board at a boarding-house, stayed

there a few weeks, and then went to the Yellowstone Park. He wrote to nobody that he was at Mandan, dated no letters there, and gave no notice to anybody of his residence there. But while in the Yellowstone Park he wrote to his son that he was taking a trip through that country. In July he came back to New York, and was there a week or more; and sought and obtained an interview with his son, who was then living with his mother in Jersey City and working in New York city; and in that interview stated that he was going to Germany to get a legacy that had been left to him, and invited his son to go with him, and his son promised to give him an answer on the evening of July 30. The son went to the rendezvous on that evening, and his father was not there. About that time Streitwolf went to Mandan, and neither his son nor any other person, as far as appears, had the slightest idea that he had been away from home with a view to changing his residence, or adopting a new home. He arrived at Mandan in August, and on August 9, three days from his arrival, commenced his suit against his wife for divorce, and took measures to have the papers served upon her in New Jersey.

The court held that the husband had no *bona fide* domicil in North Dakota, that the judgment there was obtained by fraud and imposition on the court, and that the court there had no jurisdiction; and issued a perpetual injunction against setting up that judgment.

The decree was affirmed by the Court of Errors and Appeals of the State of New Jersey. 13 Dickinson (58 N. J. Eq.) 563. The husband sued out this writ of error.

*Mr. Alan H. Strong* for defendant in error.

*Mr. Willard P. Voorhees* and *Mr. Robert Adrain* for plaintiff in error, submitted on their brief.

MR. JUSTICE GRAY, after stating the case as above, delivered the opinion of the court.

This case must follow *Bell* v. *Bell, ante,* 175. The law of

North Dakota requires a domicil in good faith of the libellant for ninety days as a prerequisite to jurisdiction of a case of divorce.  *Smith* v. *Smith,* 7 North Dakota, 404, 413.  The facts in evidence warranted, and indeed required, the finding that the husband had no *bona fide* domicil in the State of North Dakota, when he obtained a divorce there, and it is not pretended that the wife had an independent domicil in North Dakota, or was ever in that State.  The court of that State, therefore, had no jurisdiction.

*Judgment affirmed.*