13436

### YARBOROUGH v. YARBOROUGH

(166 S. E., 877)

*Mr. Stephen Nettles,* for appellant,

*Messrs. Lyles & Daniel,* for respondent,

June 27, 1932.

The opinion of the Court was delivered by MR. JUSTICE BONHAM.

This is one of those unlovely cases in which the dissensions of parents find their worst results in the unhappiness and hardships of the children born of the unhappy union.

W. A. Yarborough and Susie Blowers were married at Spartanburg, S. C., September 3, 1904. They had one child, who is the plaintiff in this action. In 1927 Mr. and Mrs. Yarborough separated; he lived in Atlanta, Ga., and she and the child in Hendersonville, N. C. September 21, 1927, he brought suit in the Superior Court of Fulton County, Ga., seeking a total divorce from his then wife. She appeared, answered, and filed a cross-bill praying that a total divorce be granted her.

By a consent order of date November, 1927, W. A. Yarborough was required to pay to his wife, as temporary alimony, $125.00 per month, and for support of the child $75.00 per month. By an order of date February 29, 1928, this amount was reduced to $100.00 per month, and by an order of December 7, 1928, this sum was reduced to $50.00 per month for the months of December, 1928, and January, February, and March, 1929, and thereafter to be restored to $100.00 per month.

January 17, 1929, the first verdict was rendered in favor of a total divorce between the parties. On the same day Judge Pomeroy passed an order by the terms of which W. A. Yarborough was required to pay to Susie Yarborough $1,750.00 and to R. D. Blowers, as trustee for Sadie Yarborough, $1,750.00; "the same being in full settlement of temporary and permanent alimony in said case, and in full settlement of all other demands of every nature whatsoever *between the parties* * * *. (Italics added.) The amount to be thus received by R. D. Blowers as trustee for Sadie

Yarborough, minor daughter of plaintiff and defendant, shall be expended by him in his discretion for the benefit of the minor child, including her education, support, maintenance, medical attention and other necessary items of expenditure." "Upon the compliance with this order by the plaintiff he shall be relieved of all payments of alimony and counsel fees."

By the provisions of the order the child remained in the custody of her mother, but it was directed that her father should have the right to see her at the times and under the conditions set out in the order.

The payments were made after some delay.

July 7, 1929, the second and total divorce verdict was rendered. The same day Judge Pomeroy passed an order granting to each party a total divorce with the privilege of remarrying. Two months thereafter W. A. Yarborough remarried.

August 10, 1930, Sadie Yarborough, a minor, brought this action by her guardian *ad litem,* against her father demanding of him the lump sum of $1,000.00 and $125.00 per month thereafter for her support and maintenance.

By his answer defendant sets up as a bar to this action the provisions of the order of the Superior Court of Fulton County in the divorce suit, by which he was required to pay to R. D. Blowers as trustee of Sadie Yarborough, plaintiff in this action, the sum of $1,750.00, as permanent alimony for her (which payment he made) ; he further pleaded that the matter of his liability for the support and maintenance of his daughter during minority has been finally and completely adjudicated; by the judgment of the Superior Court of Fulton County, Ga., which judgment is binding on the Courts of this State under Article 4, § 1, of the Federal Constitution; and that matter is now *res adjudicata.*

Further answering the defendant alleged that the Superior Court of Fulton County obtained full and exclusive jurisdiction of this plaintiff in the divorce suit between her

parents, as well as the matter of his obligations to support her, and if she has any present claim against him it can only be heard in that Court, and the Court in which the action is brought is without jurisdiction to entertain the action.

Further answering the defendant alleged that he is now, and at the time of the order for the payment of the $1,750-.00 for alimony was, a man of very moderate means, and that the said sum was and is reasonable provision for the maintenance and support of plaintiff.

Further answering, defendant alleges that by the terms of the order of the Georgia Court he was given the right to see his daughter at intervals; that on the occasion of his last visit she was so bitter, insulting, and disrespectful in her attitude and language, and wrote him such a painful and uncalled for letter, that in spite of his affection for her, he has not persisted in trying to see her; and he alleges that if he were otherwise liable to support her he should not be called on to do so in these circumstances.

Further answering, defendant alleges that he has re-married; that if she will enter his house as a dutiful daughter, he and his wife will welcome her, and so long as she maintains that attitude will support her to the best of his ability.

The issues thus joined were referred to the master to take the testimony; upon the report thereof the case was heard by Judge Sease. August 21, 1931, his Honor filed his decree, from which this appeal comes to us.

The defendant was a resident of the State of Georgia. Jurisdiction was obtained in the Court of Spartanburg County by the attachment of certain property in this State and Spartanburg County which defendant owned, and by serving him personally with the summons and complaint, in the County of Spartanburg.

Judge Sease found the issues made by the pleadings against the contentions of the defendant and held that the sum of $50.00 per month was a fair and just allowance to

plaintiff for her education, maintenance and support. He ordered further that R. D. Blowers, plaintiff's maternal grandfather, be appointed trustee to receive and handle the moneys ordered to be paid to plaintiff, the trustee to give bond in the sum of $2,000.00. He ordered, further, that the sums of money in the hands of the Clerk of Court, and on deposit to the joint credit of the attorneys for the parties to the proceeding be paid to the trustee when he qualified, from which fund the trustee shall expend for the maintenance, support, and education of the plaintiff not exceeding $50.00 per month, unless a further order of the Court be obtained. He allowed plaintiff's attorneys a fee of $300.00 to be paid by the trustee from the funds ordered to be turned over to him.

From this decree defendant appeals by ten exceptions which charge error to the trial Judge in relation to the effect of the judgment of the Georgia Court in the divorce suit between defendant and plaintiff's mother as a bar to this action, and as rendering the issues in this case *res adjudicata;* error in not sustaining the plea to the jurisdiction of the South Carolina Court; error in not holding that plaintiff's conduct toward him absolved him from any obligation to support her; error in holding that the $1,750.00 paid to plaintiff under the order of the Georgia Court was entirely inadequate for the support, maintenance, and education of plaintiff; error in ordering the attached funds to be turned over to Blowers as trustee, instead of permitting defendant to furnish bond, to secure the monthly payments to plaintiff; error in holding that the case was heard by agreement of counsel without a jury.

Appellant's counsel states the issues for argument to be:

I. "The judgment of the Georgia Court in the divorce suit is *res adjudicata* of the daughter's right to support from her father."

II. "Plaintiff's conduct towards her father, as well as her attitude at the trial, made it inequitable, under the circum-

stances of the case, to require him to provide for her further support."

Respondent's counsel have not contested the contention of appellant's counsel that the judgment of the Superior Court of Fulton County is binding upon the Courts of this State under Section 1, Article 4, of the Constitution of the United States. Therefore we confine our consideration of that judgment to an analysis of its provisions in order to determine whether that Court had jurisdiction of this plaintiff and whether its order determined and decided the issues made in the present case, and thus rendered them *res adjudicata*.

Let it be borne in mind that plaintiff, an infant, was not a party to the action between her parents for divorce, in which the judgment relied upon by defendant, was rendered, in that she had never been served with any summons and complaint. No guardian *ad litem* had been appointed to represent her. Defendant relies upon Section 2981 of the Georgia Civil Code 1926, which was introduced in evidence, and which is in these words:

"§ 2981. (§2462.) Alimony for children on final trial. —If the jury, on the second or final verdict, find in favor of the wife, they shall also, in providing permanent alimony for her, specify what amount the minor children shall be entitled to for their permanent support; and in what manner, how often, to whom, and until when it shall be paid; and this they may also do, if, from any legal cause, the wife may not be entitled to permanent alimony, and the said children are not in the same category; and when such support shall be thus granted, the husband shall likewise not be liable to third persons for necessaries furnished the children embraced in said verdict who shall be therein specified."

"§ 2982. (§ 2463.) Judgments, how enforced.—Such orders, decrees, or verdicts, permanent or temporary, in favor of the children or family of the husband, may be enforced as those in favor of the wife exclusively."

Do the provisions of this Georgia Code give a
■ Georgia Court jurisdiction of a resident of South
Carolina, an infant, to determine her rights, in an
action to which she was not a formal party? If it should be
held that the Georgia Court had such jurisdiction, have the
provisions of the quoted section of the Code been so com-
plied with as to make the judgment of the Georgia Court
binding upon this plaintiff and decisive of her rights? The
mother of the plaintiff of this action submitted herself to
the jurisdiction of the Georgia Court when she appeared
and pleaded to the action brought by her husband for di-
vorce. In her plea she demanded temporary and permanent
alimony for herself and support for the minor child. She
consented to the granting of her $1,750.00, and to the child's
$1,750.00, which the order declares is for temporary and
permanent alimony and in lieu of all other demands. The
minor child, resident in another state, could not consent to
such an order—even if she had had the power and the op-
portunity to do so. The Courts of this State are so exceed-
ingly mindful and jealous of the rights of minors that it
does not need the citation of authorities to support the as-
sumption that such an order, made under such conditions,
would not be allowed to dispose of this child's rights. Nor
do we think that the doctrine of comity between states re-
quires any such stretch of legal procedure.

But if it should be thought to be otherwise, still the
■ order of the Georgia Court is ineffective to bar this
action in this State because it does not conform to
the provisions of the Code, above quoted, which specifically
prescribe the method by which, in a suit for divorce, perma-
nent alimony for the wife and permanent support for the
minor children shall be fixed, viz., by the final verdict of the
jury. The first verdict of the jury made no mention of ali-
mony for the wife, nor of support for the child. The second
verdict, rendered June 27, 1929, likewise was silent on the
subject of alimony and support. It will be seen that the

power of the Court in a divorce suit to make provision for the support of minor children derives from the finding of the jury on the second verdict of the amount which the minor children shall be entitled to for their permanent support. In this case, six months before the rendering of the second verdict in which no amount was fixed for the permanent support of the minor child (the plaintiff herein), the Court passed a *consent* order, in a proceeding to which plaintiff was not a party, was not represented, to which she could not consent, which undertook to decide her rights and fix a sum to be paid her.

Did the Superior Court of Fulton County have this power? We quote from the case of *Pace v. Bergquist,* 173 Ga., 112, 159 S. E., 678, because it is in striking analogy with the case under our consideration. The opinion was by the Supreme Court of Georgia.

Mrs. Ida Lois Pace (now Bergquist), filed her petition for divorce from her then husband, Harris Milton Pace; she prayed for temporary and permanent alimony. A consent order was passed directing the defendant to pay to plaintiff $30.00 per month for the support of their minor child. The final verdict and decree did not provide for alimony for either the child or the wife. The defendant paid the sum ordered for a while and then stopped; he was ruled for contempt and under the order of the Court resumed the payments; again he defaulted in the payments and again was attached for contempt, and again resumed the payments. June 1, 1930, he again stopped payments; the plaintiff filed petition asking that he be attached for contempt. To this petition the defendant demurred on several grounds. We need consider only these two: "(d) It does not show that the jury awarded anything for the use of the child." "(e) It does not show that there was a final verdict or a final decree awarding alimony for the support of the child." The demurrer was overruled and the case was ap-

pealed. The opinion of the Supreme Court of Georgia was filed July 18, 1931. From it we take these excerpts:

"The effect of the judgment granting temporary alimony to the mother for the child, in stated monthly payments 'until further order of the Court,' when construed in connection with Civil Code 1910, § 2978, was that the payments should continue, under the supervisory power of the Court *to modify or revoke the same* [italics added], until final judgment, when the payments would cease by operation of law. *Holleman v. Holleman,* 69 Ga., 676; *Osborne v. Osborne,* 146 Ga., 344, 91 S. E., 61; *Black v. Black,* 150 Ga., 672, 104 S. E., 775."

We may here interpolate that the consent order in the case between Yarborough and his wife was a temporary one as shown by the fact that it was modified and changed three separate times.

Continuing the quotation:

*"The fact that the judgment was rendered by consent did not extend the force and effect of the judgment beyond the final verdict and decree in the divorce case. Such judgment contemplates alimony pending the cause. Higgs v. Higgs,* 144 Ga., 20, 85 S. E., 1041. [Italics added.]   *   *   *

*"Where the wife, on account of the misconduct of the husband, obtains an order granting her temporary alimony for the support of their minor child and awarding her custody of such child, and afterwards obtain*s a  *  *  * *decree granting to her a total divorce, without any provision requiring the father to pay permanent alimony for the support of the child, the father is not relieved of his legal obligation for the proper support of their child."* (Italics added.)

The judgment of the appellate Court was in these words: "The orders adjudging the father in contempt for failure to pay the temporary alimony awarded by the order of December 13, 1923, passed after the rendition of the final decree, did not have the effect of continuing in force the

original order of December 13, 1923, for the reason that the Court was without jurisdiction of the subject-matter when the subsequent orders were passed."

The order of the lower Court overruling the demurrer and adjudging the defendant in contempt was reversed.

In the case of *Gilbert v. Gilbert*, 151 Ga., 520, 107 S. E., 490, 492, the Supreme Court of Georgia said, after quoting Section 2981: "Thus it will be seen that it is the duty of the jury to fix the amount of the alimony and the amount the minor children shall be entitled to for their permanent support. See, in this connection, *Gholston v. Gholston*, 54 Ga., 285, and *Odom v. Odom*, 36 Ga., 286. The statutes clearly contemplate that the jury shall fix the amount of alimony and the allowance for the support of the minor children, and we find no provision authorizing the Judge to change or alter this amount."

It would seem to follow that the Judge in this present case had no authority, in advance of the rendering of the second verdict, to fix permanent alimony and make a permanent provision for the support of the minor child. We are satisfied that the order of the Georgia Court does not conform to the requirements of the Georgia Code, and is ineffective to bind this plaintiff.

If it were conceded that the judgment is a valid one, would it be *res adjudicata* of the issues in the present case? What are the essential elements of the doctrine of *res adjudicata?* Nowhere are they more clearly and succinctly stated than by Mr. Justice Cothran in the case of *Johnston-Crews v. Folk et al.*, 118 S. C., 478, 111 S. E., 15, 17: "The following have been declared to be the essential elements of *res adjudicata:* (1) Identity of the parties; (2) identity of the subject-matter; (3) and adjudication in the former suit of the precise question sought to be raised in the second suit."

The parties to the first suit were W. A. Yarborough and Susie B. Yarborough; the plaintiff in this action was not a

party thereto. The consent order upon which the defendant now stands was never consented to by her, nor was she, being a minor, competent to consent to it. No guardian *ad litem* was appointed to represent her interests in the case. The subject-matter of that action was the divorce of W. A. Yarborough and Susie B. Yarborough; the questions of alimony and support of the minor were incidental matters, not necessarily included in the suit. He brought the action. She answered, praying for total divorce and temporary and permanent alimony for the support of herself and the minor child (plaintiff in this action).

The verdict shows that the order upon which this defendant relies, which was a consent order, undertook to fix a lump sum for the support of the minor child as permanent support, maintenance, and education. But the record shows that such question was not passed on by the last verdict of the jury, and no sum fixed by it. The authorities from the Georgia Courts hereinabove cited show that the order had only the effect of granting temporary alimony pending the final determination of the suit for divorce, and does not decide the question of permanent support.

This present action is between Sadie Yarborough and W. A. Yarborough; the subject-matter is the support, maintenance, and education of defendant's minor daughter. This precise question was not adjudicated in the former action.

It is manifest that the essential elements of *res adjudicata* are lacking here.

II. Appellant urges that the conduct of his daughter has been so rude, disrespectful, and unkind that he ought not to be called on, in the circumstances of this case, to provide further for her support, maintenance, and education. He proclaims his affection for her, and his willingness to support her if she will come and live with him and his present wife in their home in Atlanta—and deport herself as a dutiful daughter should. We can find nothing in the record that shows such reprehensible conduct on the

part of the daughter towards her father as would deprive her of the right to support and maintenance by him. The letter written to him by her when she was thirteen years old, and learned that he had brought action against her mother for divorce, was the natural ebullition of the resentment of a child. Her attitude when he came to see her at the school may have lacked cordiality, but it was not rude. Her stand and statement at the trial may well be explained and condoned when it is considered that within two months after the divorce from her mother, her father had married again; that she believed that her father had sought the separation in order that he might "run around with other women"; that he had abandoned her and thereby forced her to bring this action.

Save for his statement at the trial there is no evidence that appellant has made any serious and sincere efforts to have his daughter live with him and his present wife. Certain it is that the wife has not invited her stepdaughter to live in the home with her and her husband.

In the case of *Shaw v. Shaw,* 122 S. C., 390, 115 S. E., 322, 323, this is said: "The next assignment of error is that his Honor held that the appellant is liable for the support of his wife and children. * * * When this Court has found that the appellant has practically expelled his wife from his home, it follows that he must furnish support when they find refuge."

The daughter has not forfeited her right to support because she does not live with her father under the conditions shown by the evidence.

"A father is bound to maintain his infant children from his own estate, however ample may be their separate resources." *Exchange Banking & Trust Company v. Finley,* 73 S. C., 429, 53 S. E., 649, 651.

It would be an idle thing to quote authorities in support of the proposition that a father is legally bound to support his minor child.

We have seen that the provision made by the Georgia Court was only for her temporary support. It follows that the respondent in this case is entitled to maintain this action for permanent support, maintenance and education.

It does not appear that the question that defendant ■ be allowed to give bond for his compliance with the order of Court, in the place of impounding the money which had been attached, was ever presented to the Circuit Court. The exception relating to it has not been presented in argument, and, hence, is not considered. Exception 5 has been abandoned. Exception 10 was not urged. The other exceptions have been considered in the views herein expressed.

The judgment of the Court is that all exceptions are overruled, and the judgment of the Court below is affirmed.

MR. CHIEF JUSTICE BLEASE, and MESSRS. JUSTICES STABLER and CARTER, and MR. ACTING ASSOCIATE JUSTICE W. C. COTHRAN concur.

## ON PETITION FOR REHEARING

MR. JUSTICE BONHAM: The earnest and strong appeal for rehearing made in this case, and certain unusual features of the case, entitle the petition for rehearing to especially careful consideration.

The burden of the argument in behalf of the petition is that the opinion of this Court is in direct opposition to the decisions of the Supreme Court of Georgia, and of the Supreme Court of this state in the case of *Exchange Banking & Trust Co. v. Finley,* 73 S. C., 423, 53 S. E., 649, 651.

It is essential to bear in mind that Sadie Yarborough, an infant, not a resident of Georgia, was never personally within the jurisdiction of the Superior Court of Fulton County, Ga. She was never a party to the suit for divorce brought by W. A. Yarborough, her father, against his wife, Susie B. Yarborough, Sadie's mother; she was never served with any process in that case, nor was she ever represented therein by guardian *ad litem.* The decisions of the Georgia

Courts upon which appellant relies are cases in which all of the parties, parents and children, were citizens of the State of Georgia for whose benefit and protection the Georgia statutes applicable in divorce proceedings were made. Susie B. Yarborough and Sadie Yarborough were residents of South Carolina. If Susie B. Yarborough, an adult, chose to submit herself to the jurisdiction of the Georgia Court, that action did not and could not of itself submit Sadie Yarborough, also a resident of South Carolina, to that jurisdiction.

The counsel for appellant in his argument on the petition for rehearing relies strongly upon the case of *Exchange Banking & Trust Co. v. Finley, supra.* It is true that that case does hold: "While it is true that the judgment in the divorce proceedings absolved him from all legal obligation to maintain her [his infant daughter], nevertheless," etc. But it is the plain inference from the record in that case that the infant child was, at the time of the granting of the divorce, with her mother in Chicago, and within the jurisdiction of the Court which granted the divorce. It may not be amiss to say that in the *Finley case* the Supreme Court said that the father was still "under a moral duty to render her assistance, which was not lessened by those proceedings [divorce]. Indeed, when it was adjudged in a proceeding to which he was a party that he was no longer liable for her support, the moral obligation became greater, for the reason that he took part in depriving her of legal rights."

Acceding to the proposition that the state, in proper circumstances, must give full faith and credit to the judgments of other states of the Union, it does not follow that such judgments may not be attacked collaterally for the purpose of showing that the foreign Court did not have jurisdiction of the person whose rights are affected by the judgment.

"A citizen of this State married a woman of New York in that State, and forthwith brought her with him, to his

South Carolina home, where they lived together as man and wife for a few years, when the wife left him and took up her residence in the State of Illinois, and there in time obtained a * * * divorce from the proper Court in Illinois, * * * the husband being * * * in South Carolina, and served only by publication, and not appearing in the action. *Held,* that this judgment of the Court of Illinois would not be recognized in the Courts of South Carolina, where divorces are not allowed for any cause, and that the Constitution of the United States, and the act of Congress in pursuance thereof, do not require such recognition, as the Court in Illinois never acquired jurisdiction of the person of the husband." *McCreery v. Davis,* 44 S. C., 195, 22 S. E., 178, 28 L. R. A., 655, 51 Am. St. Rep., 794.

"Neither the constitutional provision, that full faith and credit shall be given in each State to the public acts, records, and judicial proceedings of every other State, or the act of Congress passed in pursuance thereof, prevents an inquiry into the jurisdiction of the Courts by which a judgment offered in evidence was rendered. The record of a judgment rendered in another State may be contradicted as to the facts necessary to give the Court jurisdiction; and if it be shown that such facts did not exist, the record will be a nullity, notwithstanding it may recite that they did exist." *Thompson v. Whitman,* 18 Wall., 457, 21 L. Ed., 897.

"This decision was afterwards followed in *State of Wisconsin v. Insurance Co.,* 127 U. S., 265, 8 S. Ct., 1370, 32 L. Ed., 239; *Streitwolf v. Streitwolf,* 181 U. S., 179, 21 S. Ct., 553, 45 L. Ed., 807; * * * *German S. & L. Society v. Dormitzer,* 192 U. S., 125, 24 S. Ct., 221, 48 L. Ed., 373—and it is referred to with approval in *Haddock v. Haddock,* 201 U. S., 562, 26 S. Ct., 525, 50 L. Ed., 885 [5 Ann. Cas., 1], and *McCreery v. Davis,* 44 S. C., 195, 22 S. E., 178, 28 L. R. A., 655, 51 Am. St. Rep., 794. * * *

"On this point the Circuit Judge charged the jury, if the defendant was a resident of the State of Georgia at the time the divorce proceedings were carried through the Georgia Court, then the decree of divorce must be recognized in this state as a complete protection to him against the charge of adultery; but if he went to Georgia for a mere temporary purpose, with no intention to become a resident, then the Georgia Court was without jurisdiction, and its decree would be a nullity," etc. *State v. Westmoreland*, 76 S. C., 145, 148, 56 S. E., 673, 8 L. R. A. (N. S.), 842.

In the matter of the succession of Benton, 106 La., 494, 31 So., 123, 125, 59 L. R. A., 135, it is held: That a divorce granted by a Court of competent jurisdiction of another state which did not on its face disclose any intrinsic nullity was "subject to attack only upon proof of extrinsic facts *undermining the jurisdiction*." Citing *Smith v. Smith*, 43 La. Ann., 1140, 10 So., 248.

It is manifest that the judgment of a foreign Court is not binding in this State under the full faith and credit clause of the Constitution and acts of Congress, where the Court of the foreign state had not acquired jurisdiction of the person whose rights are sought to be affected by the judgment. It is certain that the superior Court of Fulton County of the State of Georgia, while acquiring jurisdiction of W. A. Yarborough and Susie B. Yarborough, never acquired jurisdiction of the person of the infant, Sadie Yarborough, in the suit for divorce between the parents. As to her that judgment is a nullity, and does not render the issues in this present action between her and her father in the Court of Common Pleas for Spartanburg County, in the State of South Carolina, *res adjudicata*.

It seems to us an untenable proposition that the rights of infants, residents in one state, may be disposed of by a suit between the parents in another state, to which suit the infants are not parties, were not represented by guardian *ad litem*, were never served in any way with process, and were

never found within the jurisdiction of the foreign Court; and that the judgment of the foreign Court in the case between the parents precludes the infant from bringing an action against one or the other of the parents in the Courts of the state of the infant's residence, because the issues are rendered *res adjudicata* by the judgment of the foreign Court in the suit between the parents.

We cannot accede to such a doctrine.

The petition for rehearing is denied, and the order staying the remittitur is revoked.

MR. CHIEF JUSTICE BLEASE, and MESSRS. JUSTICES STABLER and CARTER concur.

MR. ACTING ASSOCIATE JUSTICE W. C. COTHRAN (dissenting) : A more careful study of this case convinces me that the petition for a rehearing should be granted. I do not wish to delay longer the final disposition of the case and regret that I have not had an opportunity to elaborate my reasons.