DOROTHY SILBERT SPRAGUE, respondent,

*v.*

HOWARD BENNETT SPRAGUE, appellant.

[Decided January 9th, 1942.]

On appeal from a decree of the Court of Chancery advised by Advisory Master Herr, who filed the following opinion:

"The parties to this suit were married in the year 1926 and co-habited in the City of New Brunswick in this state from the year 1927 until December 9th, 1939, at which time defendant abandoned complainant and thereafter has refused to maintain and provide for her. She now sues him for separate maintenance.

"He does not deny, nor does he plead any matters in justification of her charges of abandonment and refusal to maintain and support, but rests his defense upon a decree of divorce secured by him in the courts of Nevada on March 5th, 1940. The issue in the present suit is whether or not that decree is valid in New Jersey. If it be valid here it constitutes a complete defense; if invalid, complainant is entitled to a decree pursuant to the prayer of her bill.

"When defendant abandoned his wife and left New Jersey his primary purpose was to secure a divorce elsewhere, notwithstanding that the matrimonial domicile of the parties was in New Jersey. Within a few days thereafter he went to the State of Nevada, where he instituted and prosecuted his suit for divorce as expeditiously as the law of that state permitted. Notice was published and substituted service of process made upon Mrs. Sprague in New York City, in accordance with the Nevada law. She entered no appearance in the suit.

"Defendant insists that he was then a *bona fide* resident of (that is, domiciled in) the State of Nevada, but the fact is that although he did not then intend to return to New Jersey he had not made up his mind where his new domicile would be. He was financially unable to settle permanently in Nevada or anywhere else until he could succeed in securing a position with some college or other institution as an agronomist, that being the profession for which he was trained, and the field in which he had attained distinction. He was convinced that he must clean up his marital 'mess' by securing a divorce before he would be justified in applying anywhere for a suitable position. He hoped (without any assurance whatsoever) that after securing a divorce he might become associated with some suitable institution either in Nevada or elsewhere in the northwest. Pending his divorce suit he made informal inquiries in Nevada and in neighboring states as to possible openings, but not until his decree was entered did he make active efforts to become associated with any of such institutions. Finding no opening in Nevada or elsewhere in that section of the country he went to Washington, District of Columbia, and from that point continued to make inquiries for some months without success, finally returning to New Jersey to reassume his original position which in the meantime had remained unfilled.

"When he left New Jersey, therefore, his intention to establish a domicile elsewhere was indefinite and uncertain as to any particular place. Where that place might prove to be was dependent upon the location of his future professional activities, at that time a highly uncertain contingency.

"To effect a change of domicile a person must acquire a new habitation with the present intention of making it his home thenceforth, unless and until something uncertain or unexpected shall afterwards happen to induce him to adopt some other permanent home. *Harral* v. *Harral, 39 N. J. Eq. 279, 285.* The intention to make a new home must be an unqualified one, not conditioned on the happening of a future event. *17 Am. Jr. 605.* See *Denny* v. *Sumner County, 134 Tenn. 468; 184 S. W. Rep. 14; L. R. A. 1917A 285; Restatement, Conflict of Laws § 20.* While defendant intended never to return to New Jersey he had no intention of remaining in Nevada unless he could secure a suitable position in that state—a condition precedent to his making it his permanent home. The *animus non reverlendi* was present, but the *animus manendi* was absent. Defendant therefore failed to effect a change of his domicile from New Jersey to Nevada.

"Defendant's decree does not come within the protection of the United States Constitution, article IV, section 1 (the 'full faith and credit' clause), not only because of the lack of domicile of either party in Nevada, but because, the matrimonial domicile of the parties being in New Jersey, process in the suit was not personally served upon Mrs. Sprague in Nevada, nor did she enter any appearance. *Haddock* v. *Haddock, 201 U. S. 562; 50 L. Ed. 867; 26 S. Ct. 525; 5 Am. Cas. 1.* Hence, the validity of the decree in New Jersey must be determined by our own public policy.

"By the 1907 act the legislature declared the public policy of our state, with respect to the recognition of decrees of sister states (*R. S. 2:50-35*), as follows:

" 'Full faith and credit shall be given in all courts of this state to a decree of annulment of marriage or divorce by a court of competent jurisdiction in another state of the United States when the jurisdiction of such court was obtained in the manner and in substantial conformity with the conditions prescribed in sections 2:50-9, 2:50-10 and 2:50-11 of this title * * *; provided, that if any inhabitant of this state shall go into another state or country, in order to obtain a decree of divorce for a cause which occurred while the parties resided in this state, or for a cause which is not ground for divorce under the laws of this state, a decree so obtained shall be of no force or effect in this state.' "

"This section in effect directs us to recognize a foreign divorce decree as valid here, only when it is based upon the domicile of at least one óf the parties in the jurisdiction in which it was rendered, for otherwise the court rendering such decree could not have secured jurisdiction 'in the manner and in substantial conformity with the conditions prescribed in sections 2:50-9, 2:50-10 and 2:50-11' of our statute. These sections embody the fundamental principle that jurisdiction over the *res* depends upon domicile. Under rules of comity it has always been regarded as essential that at least one of the parties was domiciled in the state in which the questioned decree was secured in order to entitle such decree to extraterritorial recognition.

"Prior to the enactment of the 1907 act our courts adopted the rule that the adjudication by the foreign tribunal that plaintiff was domiciled there was final, unless plaintiff had practiced fraud on the foreign tribunal to induce it to find that domicile existed there, contrary to the fact. *Felt* v. *Felt, 59 N. J. Eq. 606, 610; 45 Atl. Rep. 105; 49 Atl. Rep. 1071; Magowan* v. *Magowan, 57 N. J. Eq. 322, 324; 42 Atl. Rep. 330; Streitwolf* v. *Streitwolf, 58 N. J. Eq. 563, 568; 41 Atl. Rep. 876; affirmed, 58 N. J. Eq. 569; 43 Atl. Rep. 683; 181 U. S. 179; 45 L. Ed. 807; 21 S. Ct. 553; Dumont* v. *Dumont, 45 Atl. Rep. 107, 111; Fairchild* v. *Fairchild, 53 N. J. Eq. 678, 681; 34 Atl. Rep. 10.*

"And following the enactment of the 1907 act our cases have continued quite consistently to stress the element of fraud in the simulation of domicile in the foreign jurisdiction and in the misrepresentation of the facts to the foreign tribunal (*Perlman* v. *Perlman, 113 N. J. Eq. 3, 7, 11; 165 Atl. Rep. 646; Di Brigida* v. *Di Brigida, 116 N. J. Eq. 208, 216; 172 Atl. Rep. 505; Feickert* v. *Feickert, 98 N. J. Eq. 444, 449; 131 Atl. Rep. 576; Robins* v. *Robins, 103 N. J. Eq. 26, 30; 142 Atl. Rep. 168; affirmed, 106 N. J. Eq. 198; 150 Atl. Rep. 340*), and have continued to follow the rule of the *Fairchild Case* to the effect that the adjudication by the foreign court of the fact of domicile is conclusive, unless that adjudication was procured by fraud. *Cole* v. *Cole, 96 N. J. Eq. 206; 124 Atl. Rep. 359; Pahy* v. *Pahy, 107 N. J. Eq.*

*538, 540; 153 Atl. Rep. 519; Ballentine v. Ballentine, 112 N. J. Eq. 222, 226; 164 Atl. Rep. 5; Reik v. Reik, 112 N. J. Eq. 234; 163 Atl. Rep. 907; Renner v. Renner, 13 N. J. Mis. R. 749, 760; 181 Atl. Rep. 191.*

"It seems clear that the decree here in question was procured by such fraud as the cases contemplate. The law of Nevada does not differ from our own with respect to the character of the domicile essential to clothe its courts with jurisdiction to decree divorce. *Latterner v. Latterner, 51 Nev. 285; 274 Pac. Rep. 194; Walker v. Walker, 45 Nev. 105; 198 Pac. Rep. 433; Presson v. Presson, 38 Nev. 203; 147 Pac. Rep. 1081.*

"It is not conceivable, therefore, that the Nevada court could have adjudicated that defendant was domiciled in Nevada had he disclosed to that court the conditional nature of his intention respecting his future residence. By failing to disclose these facts to the Nevada court defendant perpetrated a fraud on that court. Its adjudication of domicile was based upon his misrepresentation or suppression of the essential facts, and is, therefore, not binding upon us.

"Since neither party to this suit was ·domiciled in Nevada, defendant's Nevada decree is not within the protection of our own full faith and credit clause, *Lister v. Lister, 86 N. J. Eq. 30, 37; 97 Atl. Rep. 170; Hollingshead v. Hollingshead, 91 N. J. Eq. 261; 110 Atl. Rep. 19.*

"Moreover, the proviso of *R. S. 2:50-35* constitutes a positive prohibition to our recognition of the defendant's Nevada decree as of any force or effect in New Jersey. Defendant, an "inhabitant" of this state (that is, domiciled here: see *Potter v. Ross, 23 N. J. Law 517, 520; 1 Bouv. Law Dict. 1568; .13 Words and Phrases 266*) left New Jersey and within a few days went to Nevada for the purpose of obtaining his decree of divorce there, for a cause which occurred while the parties resided in this state. See *Sechler v. Sechler, 94 N. J. Eq. 47; 118 Atl. Rep. 629; Di Brigida v. Di Brigida, supra.*

"For the above reasons, it is my judgment that defendant's Nevada decree of divorce is of no force or effect in New Jersey, and it follows that complainant is entitled to a decree for her separate maintenance, as prayed for in her bill."

*Messrs. Milton, McNulty & Augelli,* for the appellant.

*Mr. Walter H. Flaherty,* for the respondent.

PER CURIAM.

The decree appealed from will be affirmed, for the reasons stated in the opinion filed in the Court of Chancery by Advisory Master Herr.

*For affirmance*—THE CHIEF-JUSTICE, CASE, BODINE, DONGES, HEHER, PERSKIE, PORTER, COLIE, DEAR, WELLS, WOLFSKEIL, RAFFERTY, HAGUE, THOMPSON, JJ. 14.

*For reversal*—None.