## Grande v. Grande

*Agresti & Agresti*, for plaintiff.
*Edward G. Petrillo*, for defendant.

LAUB, J., March 22, 1946.—In this petition for a declaratory judgment we are requested to define the marital status of Carl J. Grande, a resident of the City of Erie, County of Erie and State of Pennsylvania.

No answer was filed by defendants but a general appearance was entered in their behalf by local counsel. Under the circumstances we are required to consider the facts averred in the petition to be admitted: Act of May 22, 1935, P. L. 228, sec. 3, 12 PS §849.

There was no demand for a jury trial and we deem our duty to be the same as where there is a trial by a judge without a jury. Therefore, we are required to adopt the format which obtains in equity cases: Act of 1935, supra, sec. 6, 12 PS §852. This is an essential requirement in every declaratory judgment proceeding, for the very nature of a judgment demands that its scope and the circumstances upon which it is founded be clearly and unmistakably defined.

"As to the fact that judgments or decrees must be certain and unequivocal, it is aptly stated in Freeman on Judgments, §72: 'Inasmuch as the judgment and its enforcement is the end and aim of the whole litigation, to satisfy this purpose it must so dispose of the matters at issue between the parties that they and such other persons as may be affected, will be able to determine with reasonable certainty the extent to which their rights and obligations have been determined.' Where a judgment or decree lacks such certainty and is absolutely unintelligible, it is a nullity: 34 C. J., §863, pp. 563-4.": Rockett Will, 348 Pa. 445, 450.

From the pleadings we make the following

*Findings of fact*

1. Carl J. Grande and Mary F. Grande, also known as Mary F. Keasey, were married April 11, 1929, at Ripley, New York, and both of them were at that time

residents and citizens of the City of Erie, County of Erie and State of Pennsylvania.

2. Following the marriage the parties lived together at Erie, Pa., as husband and wife, until December of 1943, when the parties separated.

3. On November 29, 1943, Mary F. Grande filed a libel in divorce in this court at No. 132 February Term, 1944, naming petitioner as respondent, and alleging that petitioner had committed wilful and malicious desertion and absence from the habitation of Mary F. Grande, the injured and innocent spouse, without reasonable cause for and during the term and space of two years. Upon service of the subpœna in that case, petitioner Carl J. Grande entered a rule on Mary F. Grande for a bill of particulars. Said bill of particulars was never furnished and the divorce proceedings were never pursued to final judgment.

4. On or about March 10, 1945, Mary F. Grande went to the City of Reno, County of Washoe, and State of Nevada, for the avowed and sole purpose of enabling the said Mary F. Grande to obtain a divorce from petitioner.

5. Precisely six weeks after her arrival in Reno, Nevada, on June 5, 1945, defendant, Mary F. Grande, brought suit for divorce from petitioner in the First Judicial District Court of the State of Nevada in and for the County of Ormsby. In said action is was alleged that the parties had lived separate and apart without cohabitation for a period of more than three consecutive years preceding the commencement of said divorce action.

6. On July 19, 1945, the First Judicial District Court of the State of Nevada in and for the County of Ormsby, entered a decree of absolute divorce upon the action mentioned in the preceding paragraph, said decree of absolute divorce being granted on the ground of extreme cruelty.

7. During the entire period of the Nevada proceeding, petitioner was never personally present within the State of Nevada, he was not served there with any summons or process in that divorce proceeding, but he was served in the City of Erie, County of Erie and State of Pennsylvania, with a copy of the summons therein. Petitioner did not appear in the divorce proceeding in Nevada either in person or by attorney and never authorized any person or attorney to appear for him therein and no appearance was ever entered or made on his behalf.

8. Defendant Mary F. Grande, following the entry of the Nevada divorce decree above mentioned, entered into a purported marriage with Webster Keasey, the other defendant, the date and place of said purported marriage being unknown.

9. At the time defendant Mary F. Grande applied for a divorce in Nevada she was not a bona fide resident of that State.

*Discussion*

There can be no doubt but that every citizen is entitled to a clear understanding of his own marital status. Almost every decision of his daily life, whether economic, social or spiritual, depends upon the certainty of that status. The right to convey real estate without joinder of a spouse; the rights, duties, liabilities and obligations arising under the Federal income tax laws; the important function of preparing a will; the right to marry and beget legitimate children; the uncertainty as to the obligation to support and maintain an alleged spouse—all of these and many other similar problems cannot be resolved by an individual unless his legal status as a married or single person be clear and incontestable. Therefore, a petition for a declaratory judgment is the proper method by which that status can be adjudicated: Melnick v. Melnick, 154 Pa. Superior Ct. 481.

The legal questions raised by this petition have been so thoroughly discussed and so definitely settled by the decisions of the highest courts of Pennsylvania and of the United States, that any consideration of them by us must perforce be historical in character.

Since the celebrated decision of the United States Supreme Court in Haddock v. Haddock, 201 U. S. 562, 26 S. Ct. 525 (1906), there has been an overabundance of concurring and dissenting opinion [1] expressed, verbally and in writing, as to the right of a State to refuse full faith and credit to a divorce decree of a sister State. The ghost of Haddock v. Haddock has been an invited guest at many a gathering attended by lawyers, and it has frequently appeared in an uninvited form in bar examinations. In that case the United States Supreme Court held that the State of New York, the matrimonial domicile where the wife still resided, need not give full faith and credit to a Connecticut decree of divorce, since it was obtained by the husband who wrongfully left his wife in the matrimonial domicile, service on her having been obtained by publication and she not having entered an appearance in the action.

It is to be observed that the Haddock case did not include in its scope a situation where the divorcing State did not have jurisdiction of the party seeking the divorce. Thus, it did not conflict with the decision of the United States Supreme Court in Bell v. Bell, 181 U. S. 175, 21 S. Ct. 551, and its companion case, Streitwolf v. Streitwolf, 181 U. S. 179, 21 S. Ct. 553 (both decided April 15, 1901), in which it was held that a decree of divorce was not entitled to full faith and credit when it was granted on constructive service by the courts of a State in which neither spouse was domiciled.

The turmoil created by Haddock v. Haddock was further increased when in Williams et al. v. State of North Carolina (1), 317 U. S. 287, 63 S. Ct. 207 (de-

---

[1] See the oft-discussed dissent by Mr. Justice Holmes, 201 U. S. 628.

cided December 21, 1942), Haddock v. Haddock was expressly overruled. In the Williams case it was held that the findings of a Nevada court in divorce proceedings that the plaintiff was a bona fide and continuous resident of Nevada and had been such a resident for more than six weeks immediately preceding commencement of the action in the manner prescribed by law, were required to be treated as showing that the court had jurisdiction. It did not, however, go into the question of what should be done in those cases where there was affirmative evidence that the divorcing State had no jurisdiction. As was said in the majority opinion (317 U.S. 302):

"But the question for us is a limited one. In the first place, we repeat that in this case we must assume that petitioners had a *bona fide* domicil in Nevada, not that the Nevada domicil was a sham. We thus have no question on the present record whether a divorce decree granted by the courts of one state to a resident as distinguished from a domiciliary, is entitled to full faith and credit in another state. Nor do we reach here the question as to the power of North Carolina to refuse full faith and credit to Nevada divorce decrees because, contrary to the findings of the Nevada court, North Carolina finds that no *bona fide* domicil was acquired in Nevada."

By thus limiting its scope of inquiry and by flatly overruling the Haddock case, Williams et al. v. State of North Carolina (1), supra, gave rise to speculation as to the attitude to be assumed by our Supreme Court should a case on fours with Bell v. Bell, supra, be brought before it. This was particularly true because the Williams decision referred to the Bell case but decided that it was inapposite to the problem then at hand.

Our appellate courts immediately accepted the premise that Williams et al. v. State of North Carolina (1) did not overrule Bell v. Bell. On December 14, 1942, the Superior Court had before it Melnick v. Mel-

nick, supra, involving the same legal problem as obtained in the Bell case. When, on December 21, 1942, the Supreme Court of the United States handed down Williams et al. v. State of North Carolina (1), Melnick v. Melnick was sent back for reargument in the court below. When the decision was finally handed down (March 7, 1944) the Superior Court accepted the principles of Bell v. Bell and refused to credit a Nevada divorce obtained on bare residence without domiciliary intent. In the interim, Commonwealth ex rel. Esenwein v. Esenwein, 153 Pa. Superior Ct. 69, came on for argument and on July 16, 1943, the Superior Court reached the same conclusion as that to be ultimately adopted in its final opinion in Melnick v. Melnick. The Esenwein case was appealed to the Supreme Court of Pennsylvania (348 Pa. 455) with exactly the same result. Esenwein v. Esenwein then went to the Supreme Court of the United States and, on March 14, 1945, the Superior Court of Pennsylvania handed down Commonwealth ex rel. Meth v. Meth, 156 Pa. Superior Ct. 632, which fell into lock step with Esenwein and Melnick.

On May 21, 1945, the Supreme Court of the United States resolved all doubts as to its attitude toward Bell v. Bell when it handed down Williams v. State of North Carolina (2), 325 U. S. 226, 65 S. Ct. 1092. On the same day it recorded its conclusions with respect to Esenwein v. Commonwealth of Pennsylvania ex rel. Esenwein, 325 U. S. 279, 65 S. Ct. 1118. Williams v. State of North Carolina (2) was not a reconsideration of Williams v. State of North Carolina (1). When Williams (1) went back to the court below for "proceedings not inconsistent" with the opinion of the Supreme Court, North Carolina attacked the validity of the Nevada divorce decree on the ground that Nevada lacked jurisdiction. The facts were submitted to a jury in a criminal case wherein defendants were charged with a statutory crime known as bigamous cohabita-

tion.[2] The jury was instructed that (after the State had shown evidence sufficient to convict under its statute and the defense had offered the Nevada decree in its own behalf) if defendants had domicile in North Carolina and went to Nevada "simply and solely for the purpose of obtaining" divorces, intending to return to North Carolina on obtaining them, they never lost their North Carolina domiciles nor acquired new domiciles in Nevada (see 325 U.S. 236). The jury convicted. Hence Williams (2).

Williams (2) and Esenwein are the last expressions of the United States Supreme Court on the subject and it is clear from their language that a State need not give full faith and credit to a judgment of a sister State when there is affirmative proof that the latter did not have jurisdiction. Thus by Williams (1) and Williams (2) the ghost of Haddock has been laid and the holding of the Bell case has been perpetuated for the time being at least. See Evans v. Evans, 149 F. (2d) 831.

Despite the fact that Williams (2) did not change the law as it has existed in the United States since April 15, 1901 (the date of Bell v. Bell and Streitwolf v. Streitwolf, supra) it has been made the basis for extravagant prognostication and wild speculation. One author states:[3]

"Lawyers foresee that a good many wills will be upset in cases where a man dies and leaves his property to 'my wife'. A good many children may be illegitimatized, and a glorious field day for blackmailers will be ushered in when ex-wives plus shyster lawyers can threaten criminal prosecution for bigamy."

---

[2] Set forth in a footnote to Williams (2), p. 227, as par. 14-183 of the General Statutes of North Carolina (1943).

[3] Helena Huntington Smith, in an article (originally printed in Collier's and condensed in "The Woman") entitled "Divorce Can Lead to Bigamy".

The same author, after giving advice as to methods by which the law might be defeated, calls upon that portion of the American people now presumptively guilty of bigamy to organize for the purpose of remolding the law to suit their own views.

The same dire forebodings as to the bastardizing of children were expressed by Mr. Justice Holmes in his dissent from Haddock. In that there was justification. For Haddock was a sweeping scythe which cut down all foreign divorces not obtained in the matrimonial domicile or at least in the respondent's domicile with personal service. But Williams (1), in its requiescat to Haddock, gave full faith and credit to such divorces. Every divorced person under such circumstances retains that status until the decree is attacked by affirmative proof that he did not have the proper residence in the divorcing State at the time he sought it. And the burden of proof upon one who seeks to upset such a divorce is high. Thus, one who honestly, and with proper domiciliary intent, secures a divorce in a foreign jurisdiction may confidently remarry and have children without the fear that said children will subsequently be declared illegitimate in the State of his origin.

Almost 45 years of experience following Bell v. Bell have failed to develop the "glorious field day for blackmailers" which is now expected to follow Williams (2). In Pennsylvania, at least, there was never any doubt as to who was the widow of a man who was divorced in Nevada under similar circumstances: See Grossman's Estate No. 1, 263 Pa. 139 (decided in 1919 on the basis of Haddock v. Haddock, but reiterating the principle that where a divorcing sister State has no jurisdiction, the marriage still obtains in Pennsylvania). In fact, Pennsylvania antedated Haddock by at least 39 years: Colvin v. Reed, 55 Pa. 375, decided in 1867. See also Reel v. Elder, 62 Pa. 308, Heins's Estate, 22 Pa. Su-

perior Ct. 31, Fyock's Estate, 135 Pa. 522, which were decided before the Haddock case.

The champions of those who obtain easy divorces upon perjured testimony in foreign jurisdictions overlook a class of citizens who decidedly need protection. What of the injured and innocent spouse who cannot raise sufficient funds to travel a thousand miles, employ foreign counsel, transport witnesses and maintain them a sufficient number of days to successfully defend where a divorce is fraudulently sought by a guilty spouse? What of the deserted children left behind and who are most vitally concerned with the maintenance of the marriage relationship between their parents? What of their mother's right to support in order that she may maintain them under a common roof where they can bask in the light of her love and affection? Must she put her children in a home or the care of a stranger while she goes out to work to maintain herself? True, she may still collect support for her children but this does not imply that she can use that money to keep herself. To live and devote all of her time to the very social task of rearing children requires her full time. By the same token, are we to make it easy for a woman to desert her home and husband and leave him to be both father and mother?

We do not doubt the legal or social necessity for recognizing divorces honestly granted to bona fide residents of sister States. Williams (1) establishes that. But there is no statutory equivalent for a bona fide residence. As the cases hold, there must be an intent annexed to the physical residence. If we hold our citizens to the rules of domicile, there will at least be sufficient permanency to enable the deserted spouse to marshal his or her forces for combat. Obviated will be the danger of a spouse skipping from State to State, one jump ahead of a divorce contest, and to the manifest prejudice of an innocent respondent.

The time has long since arrived for the realization of one inexorable fact. Divorce is an extraordinary remedy for the alleviation of peculiarly aggravated conditions. Above all, divorce is not a commodity to be obtained at the most available market and under the best possible terms.

Nevada had no jurisdiction to grant Mary F. Grande a divorce from the petitioner.

"An adjudication of a court without jurisdiction is 'void and no legal efficacy.' ": Patterson's Estate, 341 Pa. 177, 182.

*Conclusions of law*

1. The petitioner Carl J. Grande and the respondent Mary F. Grande were lawfully joined in marriage April 11, 1929.

2. On June 5, 1945, when Mary F. Grande filed her action of divorce against Carl J. Grande in Nevada, Mary F. Grande was not a bona fide resident of the State of Nevada.

3. On July 19, 1945, when the First Judicial District Court of the State of Nevada in and for the County of Ormsby entered a decree of absolute divorce in favor of Mary F. Grande and against Carl J. Grande, said court had no jurisdiction of either of the parties and said judgment in divorce was void.

4. Petitioner has met the burden of proof required by law establishing that the State of Nevada had no jurisdiction to grant Mary F. Grande a divorce against petitioner.

5. The judgment of divorce granted by the State of Nevada in this case having been successfully attacked on the grounds of lack of jurisdiction, said judgment in divorce is not entitled to full faith and credit in Pennsylvania.

6. Petitioner Carl J. Grande and respondent Mary F. Grande are husband and wife.

*Decree*

And now, March 22, 1946, it is adjudged and decreed that petitioner Carl J. Grande and respondent Mary F. Grande are husband and wife to the fullest extent and as contemplated by the law in its recognition of the marriage state.